# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| **CHAD MCFARLIN, individually and** | : | Civil Action No.: 2:16-cv-12536 |
| **on behalf of all similarly situated** | : | |
| **persons,** | : | |
| | : | Hon. Gershwin A. Drain |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE WORD ENTERPRISES, LLC, et** | : | |
| **al.** | : | |
| | : | |
| **Defendants.** | : | |

## PLAINTIFF'S MOTION FOR
## PARTIAL SUMMARY JUDGMENT ON THE ISSUES OF:
## (1) INDIVIDUAL LIABILITY OF DEFENDANT KEVIN DITTRICH AND
## (2) DEFENDANTS' USE OF TIP CREDIT TO SATISFY MINIMUM WAGE

Pursuant to Fed. R. Civ. P. 56, Plaintiff Chad McFarlin moves for partial summary judgment on the issues of: (1) individual liability of Defendant Kevin Dittrich for alleged minimum wage violations resulting from Defendants' failure to reasonably reimburse the delivery drivers for their vehicle expenses; and (2) Defendants' lawful use of a tip credit to satisfy their minimum wage obligations under state and federal law. Summary judgment is appropriate on each issue because the undisputed facts clearly establish that Dittrich was an "employer" of the delivery drivers, and because it is well-established that tips in excess of a lawfully-invoked tip credit cannot be used satisfy an employer's minimum wage obligations.

Concurrence was sought on December 29, 2017 but the parties were unable to agree to the relief requested, necessitating the filing of this Motion.

> Respectfully submitted,
>
> /s/ David M. Blanchard
> David M. Blanchard (MI P67190)
> BLANCHARD & WALKER PLLC
> 221 N Main Street, Suite 300
> Ann Arbor, MI 48104
> (734) 929-4313
> Blanchard@bwlawonline.com
>
> Mark Potashnick
> WEIHAUS & POTASHNICK
> 11500 Olive Blvd., Suite 133
> St. Louis, MS 63141

Dated: December 29, 2017          *Attorneys for Plaintiff and the Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **CHAD MCFARLIN, individually and on behalf of all similarly situated persons,** | : | Civil Action No.: 2:16-cv-12536 |
|  | : |  |
|  | : | Hon. Gershwin A. Drain |
|  | : |  |
| **Plaintiffs,** | : |  |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **THE WORD ENTERPRISES, LLC, et al.** | : |  |
|  | : |  |
|  | : |  |
| **Defendants.** | : |  |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUES OF: (1) INDIVIDUAL LIABILITY OF DEFENDANT KEVIN DITTRICH AND (2) DEFENDANTS' USE OF TIP CREDIT TO SATISFY MINIMUM WAGE

## **TABLE OF CONTENTS**

CONCISE STATEMENT OF ISSUES PRESENTED ............................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................... iv

I.   INTRODUCTION .................................................................................... 1

II.   STATEMENT OF UNDISPUTED RELEVANT FACTS ................................ 3

III.   ARGUMENT ........................................................................................ 10

    ***A.   Standard for Summary Judgment*** ....................................................... **10**

    ***B.   Plaintiff is Entitled to Summary Judgment Regarding Dittrich's Individual Liability for any Minimum Wage Violations*** ................. **10**

        1.   Individual Liability for Employers ............................................. 10

        2.   There is No Genuine Issue of Material Fact Regarding Dittrich's Status as an "Employer" ......................................... 13

    ***C.   Plaintiff is Entitled to Summary Judgment Regarding Lawful Use of a Tip Credit to Satisfy Minimum Wage*** ................................. **15**

        1.   A "Tip Credit" and the Minimum Wage ..................................... 15

        2.   The Drivers' Tips in Excess of the Amount of the Tip Credit Cannot Offset Minimum-Wage Deficits .................................. 17

        3.   The Undisputed Facts Show No Genuine Issue of Material Fact Precluding Summary Judgment in Plaintiffs' Favor ............... 21

IV.   CONCLUSION ..................................................................................... 22

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.     Whether Defendant Kevin Dittrich is an "employer" of delivery drivers for the defendant business entities where he exercised operational control over significant aspects of the entities, including but not limited to developing and implementing the delivery reimbursement policy that Plaintiff alleges resulted in the drivers being paid a sub-minimum wage.

Plaintiff's Answer:          Yes

Defendants' Answer:      No


II.    Whether Defendants may use tips received by delivery drivers in excess of the applicable minimum wage to offset unreimbursed vehicle expenses incurred by the drivers while performing deliveries for Defendants, where the drivers at all relevant times received the bare minimum wage after proper application of a tip credit.

Plaintiff's Answer:          No

Defendants' Answer:      Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Williams v. Jacksonville Terminal Co.,* 315 U.S. 386 (1942)

*Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 965 (6th Cir. 1991)

*U.S. Dept. of Labor v. Cole Enters., Inc.*, 62 F.3d 775 (6th Cir. 1995)

*Perrin v. Papa John's Int'l., Inc.*, 114 F. Supp. 3d 707 (E.D. Mo. 2015)

29 U.S.C. § 203(d) and (m)

MCL 408.412(d)

29 C.F.R. § 531.59

## I.   INTRODUCTION

Plaintiff Chad McFarlin ("Plaintiff" or "McFarlin") brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*, and as a Rule 23 class action under the Michigan Minimum Wage Law ("MWL"), MCL § 408.381 *et seq.*, and the Michigan Workforce Opportunity Wage Act ("WOWA"), MCL § 408.411 *et seq.*, to recover unpaid minimum wages owed to him and similarly situated delivery drivers employed by Defendants at their Hungry Howie's stores.

Defendants owned and operated at least four Lansing-area "Hungry Howie's" pizza restaurants during the statutory limitations period. At each of these stores, delivery drivers are required to furnish their own vehicles and pay out-of-pocket for all vehicle expenses they incur while making deliveries. Plaintiff alleges that Defendants provided only a partial—and unreasonably low—reimbursement for these expenses and, as a result, Plaintiff and similarly-situated delivery drivers were paid net wages below the federal and Michigan minimum wages.

Plaintiff brings this motion for partial summary judgment to address two issues, resolution of which will greatly simplify this case for trial.

First, Plaintiff seeks a ruling from this Court that Defendant Kevin Dittrich ("Dittrich") is an "employer" of all drivers in the FLSA Collective and the Rule 23 Class. Defendants' own admissions establish overwhelmingly that Dittrich is "a

corporate officer with operational control" over the defendant business entities that employ(ed) Plaintiff and the similarly-situated delivery drivers. As such, Dittrich may be held jointly and severally liable (along with the business-entity defendants) for any damages resulting from Defendants' minimum wage violations.

Second, Plaintiff seeks a ruling from this Court that tips received by the drivers in excess of the amount of a lawfully-invoked tip credit *cannot* be used to offset deficiencies resulting from unreimbursed vehicle expenses. Defendants have asserted that, even if their flat per-delivery reimbursement (typically $0.75) failed to reasonably compensate the drivers for their vehicle expenses, the drivers nevertheless received a net wage above the applicable minimum wage because of tips received by the drivers (in excess of the amount of the tip credit). However, the law is clear that an employer may not use an employee's tips in this manner.

Plaintiff is to summary judgment on these issues. Such an order from this Court will greatly simplify the proceedings and focus the trial on the central issue in this case, to wit, whether Defendants' per-delivery reimbursement reasonably compensated the drivers for vehicle expenses they incurred in the operation and maintenance of their personal vehicles for the Defendants' benefit.

## II.   STATEMENT OF UNDISPUTED RELEVANT FACTS

1.     This is an action for unpaid wages under the FLSA and Michigan law. Plaintiff alleges that Defendants failed to reimburse individuals employed as delivery drivers for the reasonable cost of driving their personal vehicles while performing deliveries for Defendants, resulting in the drivers being paid a sub-minimum wage (*i.e.*, nominal wages – unreimbursed vehicle expenses = sub-minimum wages). ECF No. 75; First Amended Complaint ("Complaint") at ¶ 2.

2.     Defendants own and operate Hungry Howie's pizza franchises in the Lansing area. Relevant to this Motion are: (i) a Hungry Howie's store located in Haslett, Michigan (owned and operated by Defendant The Word Enterprises Haslett, LLC); (ii) a Hungry Howie's store located in Durand, Michigan (owned and operated by Defendant Dittrich Investments II, Inc.); (iii) a Hungry Howie's store located in Perry, Michigan (owned and operated by Defendant The Word Enterprises Perry, LLC); and (iv) a Hungry Howie's store, now closed, located in St. Johns, Michigan (owned and operated by Defendant The Word Enterprises St. Johns, LLC). *See* ECF No. 82; Defendants' Answer to First Amended Collective And Class Action Complaint ("Answer") at ¶ 13; Ex. 1, Michele Follman Dep. of June 19, 2017 ("Follman Part I Dep.") at 10:08-23.

3.     McFarlin was employed by Defendant The Word Enterprises Perry, LLC as a delivery driver from approximately July 2015 to September 1, 2016. *See*

Answer at ¶ 11 (admitting in relevant part that "Plaintiff was employed solely by Defendant TWE – Perry").

4.      On June 13, 2017, this Court certified a Rule 23 Class comprised of "[a]ll current and former delivery drivers employed by Defendants at any time after July 6, 2013 [three years prior to the filing of this lawsuit] through the present."[1] *See* ECF No. 83.

5.      Additionally, the parties have stipulated to a FLSA Collective compromising of "[a]ll current and former delivery drivers employed by Defendants at any time after July 6, 2013 [three years prior to the filing of this lawsuit] through the present." *See* ECF Nos. 31 & 86.

### *Undisputed Facts Relevant to Individual Liability*

6.      Dittrich is a partial owner, through a trust or personally, of Defendants (i) The Word Enterprises, LLC, (ii) The Word Enterprises Haslett, LLC, (iii) The Word Enterprises Lansing, LLC, (iv) The Word Enterprises Owosso, LLC, (v) The Word Enterprises Perry, LLC, (vi) The Word Enterprises St. Johns, LLC, and (vii) Dittrich Investments II, Inc. (collectively, "Defendant Entities"). *See* Answer at ¶¶ 1, 10 (admitting in relevant part, respectively, that: "Defendant Dittrich is a

---

[1] At the time of Plaintiff's motion for Rule 23 class certification, Defendant Dittrich Investments II, Inc. (the corporate entity which owns the Durand store location) was not a party to this case and, as such, drivers employed at that location (while subject to the same per-delivery reimbursement policy) were not included in the Rule 23 class.

member or shareholder of each of the Companies, or owns a trust which is a member or shareholder of each of the Companies"; and "Defendants admit that Defendant Dittrich is a partial owner through a trust or personally of the Defendant Companies and controls the compensation structure for these Companies."); and Ex. 2, Kevin Dittrich Dep. of June 19, 2017 ("Dittrich Part I Dep.") at 32:14 – 34:19 (discussing Dittrich's ownership interest *vis-à-vis* the Defendant Entities).

7.    Dittrich controls (or controlled) the compensation structure for the Defendant Entities. *See* Answer at ¶¶ 8, 10 (admitting in relevant part, respectively, that: "Defendant Dittrich has final control of labor relations at each Defendant Company," and "Defendant Dittrich . . . controls the compensation structure for [the Defendant Entities].").

8.    McFarlin, the Rule 23 Class, and the FLSA Collective (collectively, the "Drivers") are employed, or were employed, as delivery drivers by individual Defendant Entities.[2] *See* Answer at ¶ 13 (admitting in relevant part: "Defendants

---

[2] It *is disputed* whether the Defendant Entities (collectively) constitute a single and/or joint employer for purposes of determining FLSA liability in this case. Defendants assert that the various companies each owned and operated the respective Hungry Howie's franchise stores separately. *See* Answer at ¶ 12 (denying the allegations as untrue "because only certain Defendant Companies own and operate a pizza franchise, and those [franchises] are separately owned and operated by each company."). However, it is *not disputed* that those Defendant Entities, individually, are or were the "employer" of the Drivers that worked at each respective store. Importantly, Plaintiff's argument for individual liability for Defendant Dittrich *does not depend on and is independent of* any joint employer relationship among the several Defendant Entities.

5

admit that those [Defendant Entities] which are in operation, being [The Word Enterprises Haslett, LLC, The Word Enterprises Perry, LLC, The Word Enterprises St. Johns, LLC, and Dittrich Investments II, Inc.] each employ, or employed, delivery drivers to deliver pizza and other food times to customers.").

9.      Dittrich is a self-described "restaurateur." Ex. 2, Dittrich Part I Dep. at 06:03-04.

10.      Dittrich is "the president" and "the operating partner" for all of the Defendant Entities. Ex. 2, Dittrich Part I Dep. at 55:23-24.

11.      Dittrich manages payroll and business operations for all of his Hungry Howie's stores through two area directors, Michele Follman and Brad Follman. Ex. 2, Dittrich Part I Dep. at 54:08-57:16.

12.      Michele Follman and Brad Follman report directly to Dittrich "on a daily, weekly basis." Ex. 2, Dittrich Part I Dep. at 55:25-56:08.

13.      Dittrich participated in creating the Defendant Entities' method for vehicle delivery reimbursement. Ex. 2, Dittrich Part I Dep. at 71:21-73:22 (testifying that Dittrich and area directors perform a "competitive analysis" every year by surveying other nearby restaurants to determine delivery reimbursement).

14.      That same vehicle delivery reimbursement method ($0.75/delivery) has been used by all of the Defendant Entities, with the sole exception being that the Defendant The Word Enterprises Perry, LLC pays its drivers $1.75/delivery

($2.25/delivery since approximately August 2016) for deliveries to Laingsburg, Michigan, and the standard $0.75/delivery for all other deliveries. Answer at ¶ 18.

15. Dittrich, along with area director Michelle Follman, determined the rate and level of pay and reimbursement for the Drivers. Ex. 2, Dittrich Part I Dep. at 41:09-19 (Perry Hungry Howie's location); 48:15-18 (St. Johns location); 51:21-23 (Haslett location); 52:14-25 (Durand location).

16. Dittrich, along with area director Michelle Follman, is also responsible for the "tip credit" policy at each of the Hungry Howie's locations at issue in this lawsuit. Ex. 2, Dittrich Part I Dep. at 63:18-19.

17. General managers at Defendant's Hungry Howie's store locations are not empowered to unilaterally change the reimbursement rate for delivery drivers; rather, such changes require approval from the area manager. Ex. 2, Dittrich Part I Dep. at 57:09-16.

18. The Drivers' primary job duty is to deliver pizzas, and there are "no meaningful differences between those duties from store to store." Ex. 2, Dittrich Part I Dep. at 59:25-60:17.

### *Undisputed Facts Relevant to Permissible Use of "Tip Credit"*

19. At all relevant times, the Drivers were paid either a bare minimum cash wage, or a sub-minimum cash wage plus a "tip credit" that brought the

7

drivers' wages to the exact Michigan minimum wage.[3] Ex. 3, Michele Follman Dep. of December 5, 2017 ("Follman Part II Dep.") at 6:07-7:04, 24:04-14; Ex. 2, Dittrich Part I Dep. at 64:17-65:10.

20.   A tip credit operates by "crediting" the employer the difference between a (sub-minimum) cash wage and the applicable minimum wage by allowing the employer to claim the tip credit towards its minimum wage obligation. *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59; MCL 408.414d; *see also* Ex. 4, Dept. of Labor, Wage and Hour Division Fact Sheet #15 (rev. Dec. 2016) (stating: "When an employer claims an FLSA 3(m) tip credit, the tipped employee is considered to have been paid only the minimum wage for all non-overtime hours worked in a tipped occupation and the employer may not take deductions for walkouts, cash register shortages, breakage, cost of uniforms, etc., because any such deduction would reduce the tipped employee's wages below the minimum wage").

21.   For work time spent on tasks other than deliveries (and for all time working *prior to* September 1, 2014), the Drivers were paid the exact minimum wage. Ex. 1, Follman Part I Dep. at 28:07-31:15.

---

[3] The Michigan minimum wage has changed during the statutory period as follows: $7.40 per hour prior to and including August 31, 2014; $8.15 per hour from September 1, 2014 through December 31, 2015; $8.50 per hour in calendar year 2016; and is $8.90 per hour in calendar year 2017. Answer at ¶ 15.

22.     Since September 2014, the Drivers were paid a (sub-minimum) cash wage of $5.00/hour for all time spent performing deliveries. Ex. 1, Follman Part I Dep. at 31:08-31:15. Defendants then claimed a tip credit that brought the Drivers' wages to the exact Michigan minimum wage, *but never in excess thereof*. Ex. 3, Follman Part II Dep. at 6:07-7:04, 24:04-14; Ex. 2, Dittrich Part I Dep. at 64:17-65:10; Ex. 5, Dittrich Dep. of December 5, 2017 ("Dittrich Part II Dep.") at 10:01-12:02.

23.     In addition to the cash wage (paid by the employer) and tips (from the Defendants' customers), delivery drivers received a flat rate per-delivery reimbursement from Defendants of $0.75/delivery for all deliveries, with the sole exception that drivers at the Perry store location received an additional fixed amount per delivery to Laingsburg, Michigan. Answer at ¶ 18.

24.     The per-delivery reimbursements, which Defendants refer to as "driver commissions," are the only part of driver compensation treated as reimbursement of vehicle expenses to the drivers, rather than taxable income. The so-called "driver commissions" are not subject to withholding taxes and are not reported on payroll records. Ex. 3, Follman Part II Dep. at 27:23-28:12.

25.     In contrast to the vehicle reimbursements a/k/a "driver commissions," all cash wages and reported tips were treated by Defendants as taxable "gross

pay"-income and subject to income tax withholding. Ex. 3, Follman Part II Dep. at 54:25-55:17

## III.   ARGUMENT

### A.   Standard for Summary Judgment

One of the "principal purposes" of summary judgment is to isolate and dispose of issues and factually unsupported defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Without weighing the evidence or determining credibility, the court may grant summary judgment when no genuine issue of material fact exists as to an issue and the movant is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322.

Courts within the Sixth Circuit articulate that "[a] motion for partial summary judgment is recognized as a useful pretrial tool" which "serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact.'" *Johnson v. City of Mepmhis,* 355 F. Supp. 2d 911, 916 (W.D. Tenn. 2005) (internal quotation marks and citations omitted).

### B.   Plaintiff is Entitled to Summary Judgment Regarding Dittrich's Individual Liability for any Minimum Wage Violations

#### 1.   Individual Liability for Employers

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Further, the term "person" is also broadly defined by the FLSA to include an

"individual." 29 U.S.C. § 203(a). Thus, an individual who acts directly or indirectly in the interest of an employer in relation to an employee may be subject to individual liability under the FLSA. *Id.*; 29 C.F.R. § 791.2(b)(2).[4] "The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole*, 942 F.2d at 965 (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)).

The Sixth Circuit has concluded that this definition of "employer" under the FLSA extends liability to corporate officers with operational control of a corporation's covered enterprise. *Dole*, 942 F.2d at 965. Such individuals are jointly and severally liable, along with the employing entity, for unpaid wages. *Id.* Resolution of the inquiry requires a court to assess a variety of non-dispositive factors, such as the individual's position within the company, his or her ownership interest, and the degree of that individual's "operational control of significant aspects of the corporation's day to day functions, including compensation of employees[.]" *Id.* (internal quotation marks omitted).

---

[4] Michigan law similarly defines an "employer" in relevant part as "a person, firm, or corporation, … *and a person acting in the interest of the employer*, who employs 2 or more employees at any 1 time within a calendar year." MCL 408.412(d) (WOWA); MCL 408.382(c) (MML) (repealed eff. 05/27/2014 by 2014 PA 138). Courts in this judicial district have applied the same analysis when determining whether an individual is an "employer" under the FLSA and Michigan minimum wage law. *See Doe v. Cin-Lan, Inc.*, No. 4:08-cv-12719, 2009 U.S. Dist. LEXIS 72979, at *35 (E.D. Mich. Aug. 18, 2009) (Murphy, J.) (attached as Ex. 8).

The determination of whether an individual is an employer is a question of law for the court. *Dole*, 942 F.2d at 965; *see also Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) ("The determination of whether a particular factual setting gives rise to coverage under the FLSA is a matter of law."). In *Dole*, for example, the Sixth Circuit determined that the individual defendant, who was the owner and president of the defendant travel agency, was an "employer" within the meaning of the FLSA where he "made major corporate decisions with respect" to the agency and "generally made arrangements for the amount of salary to be paid an employee." *Id*. at 966. The Court in *Dole* was not persuaded by the individual defendant's argument that he "did not have day-to-day control of specific operations" and the fact that "actual details of calculating the hours, overtime, and commission were handled by the payroll bookkeeper," instead emphasizing that an individual need only have "operational control of *significant aspects* of the corporation's day to day functions" to be considered an "employer." *Id*. (emphasis in original).

Accordingly, courts in this Circuit have repeatedly granted a plaintiff's motion for summary judgment on the issue of individual liability in FLSA cases where the uncontroverted facts establish that the individual defendant(s) at issue had operational control of the entity defendant. *See*, *e.g.*, *Dole*, 942 F.2d at 966; *Visner v. Mich. Steel Indus.*, No. 14-cv-12786, 2015 U.S. Dist. LEXIS 95938, at

*17-21 (E.D. Mich., July 23, 2015) (Duggan, J.) (finding individual defendant was an "employer" where "he has run the company since its inception" and "reserve[d] the right" to make salary and hiring decisions) (attached as Ex. 9).; *Acosta v. CPS Foods, Ltd.*, 2017 U.S. Dist. LEXIS 182683, at *11-12 (N.D. Ohio, Nov. 3, 2017) (attached as Ex. 10); *Kimbrel v. D.E.A. Corp.*, 2016 U.S. Dist. LEXIS 189316, at *36-37 (E.D. Tenn., Aug. 2, 2016) (attached as Ex. 11).; *see also Cin-Lan*, 2009 U.S. Dist. LEXIS 72979, at *48 (Ex. 8) (denying individual defendant's motion for summary judgment on issue of "employer" status under Michigan law).

### 2. There is No Genuine Issue of Material Fact Regarding Dittrich's Status as an "Employer"

As stated above, corporate officers with operational control of significant aspects of a corporation's covered enterprise are individually liable under the FLSA. *Dole*, 942 F.2d at 965; *see also Cin-Lan*, 2009 U.S. Dist. LEXIS 72979, at *35 (Ex. 8) (Michigan minimum wage law). In this case, the undisputed facts demonstrate that Dittrich is "a corporate officer with operational control of a corporation's covered enterprise." Thus, partial summary judgment in Plaintiff's favor is warranted on the issue of Dittrich's individual liability for any minimum wage violations.

First, Defendants clearly admit that Dittrich is a corporate officer. Specifically, Defendants admit Dittrich is the "president" and the "operating partner" of all the Defendant Entities. Ex. 2, Dittrich Part I Dep. at 55:23-24.

13

Defendants also admit that Dittrich is at the top of the management hierarchy for the Defendant Entities. *Id.* at 55:17-56:08 (discussing the Defendant Entities' organizational structure).

Second, Defendants clearly admit that Dittrich maintains operational control over significant aspects over the Defendant Entities. Defendants admit: that Dittrich's area managers report to him "on a daily, weekly basis" (*Id.* at 55:10-13; 56:02-03); that Dittrich "has final control of labor relations at each Defendant Company" (Answer at ¶ 8); and that Dittrich "controls the compensation structure for [the Defendant Entities]" (Answer at ¶ 10).

Third, and specific to the violations alleged in this suit, Defendants admit that Dittrich, along with his subordinate Michele Follman, determined the pay and vehicle reimbursement rate for the Drivers. Ex. 2, Dittrich Part I Dep. at 41:09-19; 48:15-18; 51:21-23; 52:14-25. Defendants also admit that Dittrich participated in creating the Defendant Entities' method for vehicle delivery reimbursement, which involved surveying other restaurants to determine what they pay their employees. *Id.* at 71:21-73:22. Finally, Defendants admit that the same general reimbursement policy ($0.75/delivery) applied to all delivery drivers employed by Dittrich and the Defendant Entities. Answer at ¶ 18.

In sum, the undisputed facts, *wholly based on Defendants' own express admissions*, overwhelmingly establish that Dittrich was a corporate officer with

14

operational control over all of the Defendant Entities, he is an "employer" under the FLSA and Michigan law, and is thus jointly and severally liable for any minimum wage violations to the same extent as the business entity defendants.

### C.   *Plaintiff is Entitled to Summary Judgment Regarding Lawful Use of a Tip Credit to Satisfy Minimum Wage*

### 1.   A "Tip Credit" and the Minimum Wage

As a general rule, tips are the property of the *recipient* (i.e., the employee) and not the employer. *Williams v. Jacksonville Terminal Co.,* 315 U.S. 386, 397 (1942) ("In businesses where tipping is customary, the tips, in the absence of an explicit contrary understanding, belong to the recipient"); *see also* 29 C.F.R. § 531.52 ("Tips are the property of the employee whether or not the employer has taken a tip credit. . . .").

The FLSA contains an exception to the minimum wage requirement that permits employers to pay a cash wage less than the minimum wage to a "tipped employee," so long as tips received by the employee satisfy the difference between the (sub-minimum) cash wage and the minimum wage. 29 U.S.C. § 203(m); *see generally Kilgore v. Outback Steakhouse*, 160 F.3d 294, 297-298 (6th Cir. 1998). This employer discount is commonly referred to as a "tip credit." *Id*. Michigan law tracks the FLSA in this respect. *See* MCL 408.414d.

A tip credit comes with certain conditions. Applicable here, a tip credit "shall not apply with respect to any tipped employee unless such employee has

been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee." 29 U.S.C. § 203(m). "This notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit." *Perez v. Lorraine Enterprises, Inc.*, 769 F.3d 23, 27 (1st Cir. 2014). Further, the Department of Labor's regulations prohibit an employer from claiming a tip credit unless it has "informed employees in advance of '[t]he amount of the cash wage that is to be paid to the tipped employee by the employer [and] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer. . . ." *Perrin v. Papa John's Int'l., Inc.*, 114 F. Supp. 3d 707, 728-729 (E.D. Mo. 2015) (quoting 29 C.F.R. § 531.59(b)); *see also* MCL 408.414d(d) (notice requirement under Michigan law).

Here, it is undisputed that Defendants never claimed a tip credit greater than the difference between the drivers' cash wage and the applicable minimum wage. In other words (keeping in mind that tips are not wages but rather gifts from customers to employees (*see*, *e.g.*, *Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770, *53 (S.D.N.Y. Feb. 1, 2007) (recognizing that "tips are gifts from customers to wait staff, not compensation paid by the employer") (attached as Ex. 12), the drivers were at all times paid the applicable minimum wage.

16

"Nothing in the DOL guidance documents, regulations, or the FLSA permits Defendants to claim a higher tip credit retroactively, in order to gain the benefit of an offset, without having notified Plaintiffs of the higher tip credit (and the correspondingly higher rate of pay for overtime purposes)." *Perrin*, 114 F. Supp. 3d at 729; *see also U.S. Dept. of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 780 (6th Cir. 1995) (holding that an employer cannot retroactively claim the maximum tip credit allowed by law where the employer's own records showed the employer only took smaller tip credit of up to but not exceeding the minimum wage); *Reich v. Chez Robert*, 28 F.3d 401, 404 (3rd Cir. 1994) (holding that, "When the employer has not notified employees that their wages are being reduced pursuant to the Act's tip-credit provision, the district court may not equitably reduce liability for back wages to account for tips actually received").

### 2.    The Drivers' Tips in Excess of the Amount of the Tip Credit Cannot Offset Minimum-Wage Deficits

Defendants have argued that even if the per-delivery reimbursement did not adequately reimburse the drivers' vehicle expenses, there is no minimum wage violation because the drivers' cash wages, when combined with *all* tips received, was more than the applicable minimum wage. That is, Defendants impermissibly seek to apply ***all*** *tips received above the tip credit* to offset any under-reimbursement. Plaintiff is entitled to summary judgment on this issue. In fact, partial summary judgment in Plaintiff's favor not only is warranted on this issue,

17

but will focus the proceedings on the central issue in this case: whether Defendants' per-delivery reimbursement reasonably reimbursed the drivers' vehicle expenses.

Defendants' attempted claim to the benefit of all tips received has been uniformly rejected in minimum wage claims, specifically including claims by pizza delivery drivers alleging minimum wage violations resulting from under-reimbursed vehicle expenses. The most comprehensive explanation was set forth in *Perrin*, 114 F. Supp. 3d at 728-29 (E.D. Mo. 2015) (granting summary judgment against the employer).

*Perrin* observed that the tip credit comes with "conditions." First, pursuant to 29 U.S.C. § 203(m), the tip credit "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee." *Id*. at 728 (citing 29 U.S.C. § 203(m)). "This notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit." *Id*. (citing *Perez v. Lorraine Enterpr., Inc.*, 769 F.3d 23, 27 (1st Cir. 2014)). The regulations further prohibit employers from claiming a tip credit unless they have informed employees in advance of "[t]he amount of the cash wage that is to be paid to the tipped employee by the employer [and] the additional

amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer…". *Id*. at 728-29 (quoting 29 C.F.R. § 531.59(b)). The Court granted summary judgment to the plaintiffs because it was undisputed that the defendant, Papa John's International, never notified its delivery drivers that it would take a tip credit greater than the difference between the plaintiffs' cash wage and the applicable minimum wage. *Id*.

Recently, another district court considered, and soundly rejected, a pizza company's argument that *all* tips received by its drivers should be considered in assessing a minimum wage violation resulting from under-reimbursed vehicle expenses. *Meetz v. Wisconsin Hospitality Grp. LLC*, 2017 U.S. Dist. LEXIS 138380, at *14-15 (E.D. Wis. Aug. 29 2017) (stating, "Defendants may not rely on [the plaintiff's] tips in excess of the tip credit to offset any deficiencies in his receipt of the federal minimum wage arising from under-reimbursement of his vehicle expenses as a result of Defendants' alleged unreasonable approximation of his actual expenses") (attached as Ex. 13). In that case, the employer took a $2/hour tip credit to achieve the minimum wage. *Id*. at *3. The employer, like Defendants here, argued that the drivers' tips in excess of the amount of the $2/hour tip credit could offset any deficiencies in the payment of the federal minimum wage resulting from under-reimbursed vehicle costs. *Id*. at *14. The *Meetz* Court held that the employer could not rely on tips in excess of the tip credit

to offset any alleged deficiencies because doing so would amount to an impermissible "kick-back" of the drivers' wages for the benefit of the employer. *Id*. at \*14-15.[5]

The U.S. Department of Labor has taken the same position in its Wage and Hour Division Field Operations Handbook ("Handbook").[6] The Handbook instructs that if tips received exceed the "tip credit" taken, tips in excess thereof *do not* push the employee's hourly rate beyond the minimum wage, nor can those tips be used to offset job-related expenses:

> Section 3(m) limits the tip credit an employer may claim against its minimum wage obligations to the difference between the section 6(a)(1) minimum wage and the cash wage paid by the employer. Under this formula, the direct or cash wage paid by the employer, which may not be less than $2.13 per hour, plus the FLSA 3(m) tip credit (i.e., the difference between the section 6(a)(1) wage and the cash wage paid) always equals the section 6(a)(1) minimum wage. Under the 3(m) formula, payment of a higher cash wage by the employer will result in a lower FLSA 3(m) tip credit. An employee paid with the FLSA 3(m) tip credit has only been paid the FLSA minimum wage in non-overtime workweeks, and therefore the

---

[5] Like the employer in *Meetz*, what Defendants propose here constitutes an impermissible "kick-back." The Department of Labor requires that an employee's minimum wage be "paid finally and unconditionally or 'free and clear'" and forbids any "'kick-back' directly or indirectly to the employer or to another person for the employer's benefit." 29 C.F.R. § 531.35. Thus, a minimum wage violation occurs when the employee incurs an expense necessary to the performance of the employee's duties (such as the expenses associated with the operation of the drivers' personal vehicles), the employer fails to reimburse the full amount of the expense, and the unreimbursed expense reduces the employee's actual compensation below the required minimum.

[6] The relevant handbook pages are attached as Exhibit 6, and the handbook is available in its entirety at https://www.dol.gov/whd/FOH/

employer may not take non-3(m) deductions for shortages, breakage, cost of uniforms, etc.

Handbook, at § 30d06 (rev. 12/15/2016).

The Sixth Circuit has found that the DOL Handbook constitutes persuasive authority as it is "issued by the government agency responsible for enforcement of the federal wage and hour laws." *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999); *see also William J. Lang Land Clearing, Inc. v. Adm'r, Wage & Hour Div., United States DOL*, 520 F. Supp. 2d 870, 879-80 (E.D. Mich. 2007) (stating that the Handbook, "while not controlling upon the courts by reason of their authority, [does] constitute a body of experience and informed judgment to which the courts and litigants may properly resort for guidance.") (citing *Reich v. Miss Paula's Day Care Center, Inc.*, 37 F.3d 1191, 1194 (6th Cir. 1994)).

### 3. The Undisputed Facts Show No Genuine Issue of Material Fact Precluding Summary Judgment in Plaintiffs' Favor

Here, there is no dispute that Defendants paid their delivery drivers only the bare minimum wage at all relevant times. Before September 2014, it was a cash wage equal to the minimum wage. After September 1, 2014 it was in the form of a sub-minimum cash wage ($5) for time spent the drivers spent delivering food, plus a tip credit in the exact amount of the difference between the full Michigan minimum wage and $5/hour. Only that pre-specified amount was disclosed to the Drivers (to the extent any disclosure was made at all). Thus, Defendants can only

21

count the amount of their tip credit towards payment of the minimum wage; they cannot count all tips received by the Drivers. Summary judgment in Plaintiff's favor is clearly warranted.

## IV.   <u>CONCLUSION</u>

Summary judgment should be granted in Plaintiff's favor on the issues of: (1) whether Dittrich is an "employer" of the Drivers that may be held personally liable for any minimum wage violations resulting from the drivers' unreimbursed vehicle expenses; and (2) whether tips received by the Drivers in excess of the applicable tip credit can be used by any Defendant to offset minimum wage violations that resulted from a failure to reasonably reimburse the Drivers' vehicle expenses. A Proposed Order is attached as Exhibit 7.

Respectfully submitted,

/s/ David M. Blanchard
David M. Blanchard (MI P67190)
BLANCHARD & WALKER PLLC
221 N Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
Blanchard@bwlawonline.com

Mark Potashnick
WEIHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, MS 63141

Dated: December 29, 2017          *Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served by ECF on all known parties on this 29th day of December 2017.

<u>/s/ David M. Blanchard</u>
David M. Blanchard