# Visner v. Mich. Steel Indus.

United States District Court for the Eastern District of Michigan, Southern Division

July 23, 2015, Decided; July 23, 2015, Filed

Case No. 14-cv-12786

**Reporter**
2015 U.S. Dist. LEXIS 95938 *; 2015 WL 4488524

DAVID VISNER, Plaintiff, v. MICHIGAN STEEL INDUSTRIES, INC., d/b/a MICHIGAN STEEL STRAPPING and SEQUOIA STRAPPING, and GARY GALLIERS, Defendants.

**Counsel:** [*1] For David Visner, Plaintiff: Jesse L. Young, Sommers Schwartz, Southfield, MI.

For Michigan Steel Industries. Inc., Doing business as Michigan Steel Strapping, Doing business as Sequoia Strapping, Gary E. Galliers, Defendants: Lawrence S. Gadd, Kecskes and Gadd, Plymouth, MI.

**Judges:** Honorable PATRICK J. DUGGAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** PATRICK J. DUGGAN

## Opinion

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff David Visner instituted this lawsuit claiming that his former employer, Defendants Michigan Steel Industries, Inc., d/b/a Michigan Steel Strapping and Sequoia Strapping, and the owner thereof, Gary Galliers, violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, by failing to pay him time-and-a-half for hours worked in a given week in excess of forty hours (Count I) and for unlawful retaliation (Count II).

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56. In this motion, Plaintiff seeks summary judgment on the issue of liability with respect to his claim for overtime wages, as well as on the issues of his entitlement to liquidated damages and whether Defendants should be jointly and severally liable to Plaintiff as [*2] "joint employers" under the FLSA. The motion has been fully briefed. Having determined that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons set forth herein, the Court will grant Plaintiff's Motion.

### I. BACKGROUND

#### A. Factual

Defendant Michigan Steel Industries, Inc. ("Michigan Steel") was founded in 1977 by Defendant Gary Galliers, the sole owner of the entity at all times since. (Galliers Dep. 7-8.) Although Michigan Steel began as a steel broker in the automotive sector, over time, the business evolved into a manufacturing company, machining and bending steel parts such as steel strapping, seals, and bucklers, as ordered by customers. (*Id.* at 10.) When operating in the automotive sector, Michigan Steel paid its employees overtime at one-and-a-half times their hourly rate. (*Id.* at 28.) However, since becoming a steel manufacturing operation, employees of Michigan Steel rarely work overtime and, if they do, they are not paid for that overtime at one-and-a-half times their hourly rate. (*Id.*; Dodge Dep. 60-61.)

Michigan Steel has thirteen employees, but does not maintain written employment policies. [*3] (Galliers Dep. 11.) When Michigan Steel has a hiring need, it will typically place an advertisement in a newspaper or on the internet. (*Id.* at 11-12.) The individual conducting the initial interview is dependent upon which position is being filled; however, Galliers, as the owner, reserves the right to "put [his] two cents in[,]" and "generally will do a follow-up interview before [an individual is hired]." (*Id.* at 12-13.)

In June of 2013, Plaintiff David Visner responded to a Michigan Steel job posting for a toolmaker, machinery builder position. (Visner Dep. 37-39.) Within a few days of submitting his resume, Michigan Steel tool room supervisor Steve Dodge called Plaintiff to schedule an

interview. (*Id.* at 38.) During this interview, Dodge learned how much Plaintiff was making at his previous job — $12.50 an hour for the first forty hours per workweek, and then time-and-a-half for any overtime, which Plaintiff indicated was at least an additional twenty hours per week. (*Id.* at 40-41.) Although the base amount offered by Michigan Steel was similar, employees at Michigan Steel worked forty-hour weeks, and were, therefore, ineligible for overtime. (*Id.* at 41.) Based on this reduction in overall earnings, neither Plaintiff nor Dodge left **[*4]** the interview with an impression that Plaintiff would ultimately end up there. (*Id.* at 42.)

Shortly after the interview, Dodge discussed Plaintiff's interview with Galliers. (Galliers Dep. 14; Dodge Dep. 42-43.) Although Dodge liked Plaintiff's technical abilities and was excited about the prospect of hiring someone who would not need training, he did not believe that Galliers would be interested in spending in excess of $13.00 per hour to hire someone for the available position. (Galliers Dep. 14, 16; Dodge Dep. 42-43.) To Dodge's surprise, however, Galliers appeared amenable, and spoke with Plaintiff on two separate occasions to determine if they could reach a deal. (Galliers Dep. 16.) Ultimately, Galliers determined that he could offer Plaintiff $15.00 per hour, a $0.50 raise every six months for two years, and up to fifty-six hours of work per workweek at the fixed hourly wage. (*Id.* at 15-16; Visner Dep. 44.) When Galliers called Plaintiff to make him this offer, there was no discussion of overtime or time-and-a-half. (Galliers Dep. 16.) Plaintiff accepted Galliers's offer and Galliers informed Dodge that he had struck a deal with Plaintiff to work up to fifty-six hours per week at his straight hourly **[*5]** rate and instructed Dodge to make accommodations for Plaintiff to work up to sixteen additional hours per week. (Dodge Dep. 45-46.)

After accepting the position, Plaintiff met with Defendants' office staff in order to sign the necessary employment documents, including a written employment agreement for fifty-six hours per week without an overtime premium. (Visner Dep. 52-23, 105-06; Galliers Dep. 17-18, 24-25.) Defendants' then finance manager, Hollie Rybicki, memorialized this agreement in a document entitled "Employee Notes" and placed it in Plaintiff's personnel file. (Galliers Dep. 12, 17-18; *see also* Employee Notes, Pl.'s Mot. Ex. A ("allowed to work up to 16 extra hours per week, not overtime, extra hours.").)

Pursuant to the above-referenced agreement, Plaintiff commenced employment with Michigan Steel as a toolmaker at their Detroit location in July of 2013, and worked there until June 26, 2014. (Visner Dep. 46, 65; Dodge Dep. 52.) Plaintiff's job duties included working as a machinist to perform repairs and maintenance on Defendants' dies and machines as needed. (Dodge Dep. 52-53.) During his tenure at Michigan Steel, Plaintiff regularly worked in excess of forty-hours per week, **[*6]** [1] but never received overtime compensation.

### B. Procedural

Plaintiff instituted the present civil action by filing a two-count complaint on July 16, 2014. (ECF No. 1.) Both counts implicate the FLSA: in Count I, Plaintiff complains of overtime wage violations committed by Michigan Steel and its owner Galliers, and in Count II, Plaintiff alleges that Defendants retaliated against Plaintiff for exercising his rights under the FLSA. Defendants answered the complaint and filed affirmative defenses on July 29, 2014. (ECF No. 4.) On January 15, 2015, after the conclusion of discovery, Plaintiff filed a Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56. In this motion, Plaintiff seeks summary judgment on Count I, and only on the issue of liability. Indeed, Plaintiff indicates in a footnote that "[s]hould the Court grant this Motion, Plaintiff will submit a separate motion for final judgment to include an assessment of total damages, attorneys "fees, and costs." (Pl.'s Br. **[*7]** 1 n.1.) Defendants responded to Plaintiff's Motion on January 29, 2015, (ECF No. 19), and Plaintiff replied on February 6, 2015, (ECF No. 20).

### II. GOVERNING LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2012). A court assessing the appropriateness of summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

---

[1] There appears to be a dispute over the average hours Plaintiff worked, however, because this motion seeks summary judgment solely on the issue of liability, the dispute regarding how many overtime hours Plaintiff worked is not material.

*Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986)). In making this assessment, a court "must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party[.]" *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).

## III. ANALYSIS

### A. Defendants Violated the FLSA's Overtime Compensation Provision

The FLSA requires employers to pay their employees time-and-a-half ("one and one-half times the regular rate") for work performed in excess of forty hours per week. 29 U.S.C. § 207(a)(1).[2] An employee's "regular rate" of pay is defined as "all remuneration for employment paid to, or on behalf of, the employee." *Id.* § 207(e). Where an employee is paid by the hour, the hourly wage is the regular rate. **[*8]** 29 C.F.R. § 778.110.

By employing Plaintiff in excess of forty hours per week without compensating Plaintiff for the excess hours at a rate of one-and-one-half of his usual pay, Defendants violated the FLSA. Indeed, Defendants concede as much in their brief. (Defs.' Br. 14 ("Because Defendants concede that they were mistaken in their understanding of the FLSA as it pertains to optional extra hours beyond the forty-hour work week . . . , the only issues presently before the Court are the appropriateness of liquidated damages and whether Defendant Galliers should be jointly and severally liable with Michigan Steel[.]").[3])

### B. Plaintiff is Entitled to Liquidated Damages for the FLSA Violation

Plaintiff contends that because Defendants violated the FLSA's basic overtime requirements, the Court should enter summary judgment in favor of Plaintiff's claim for liquidated damages. "Section 16(b) of the FLSA provides that an employer who violates the overtime compensation provisions of the FLSA 'shall be liable' for liquidated damages in an amount equal to unpaid back wages." **[*10]** *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991) (quoting 29 U.S.C. § 216(b)[4]). "[U]nder the Act, liquidated damages 'are compensation, not a penalty or punishment,' *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832, 840 (6th Cir. 2002) (internal quotations omitted), and no special showing is necessary for the awarding of such damages." *Solis v. Min Fang Yang*, 345 F. App'x 35, 38 (6th Cir. 2009) (unpublished) (per curiam). "Rather, they are considered 'the norm'[.]" *Id.* (quoting *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 585 (6th Cir. 2004)).

While an award of liquidated damages under the FLSA is presumed, such damages are not strictly mandated; rather, Congress provided the judiciary with some discretion to limit or deny liquidated damages. A "court may, in its discretion, refuse to award liquidated damages '*if, and only if*, the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act.'" *Dole*, 942 F.2d at 967 (emphasis in original) (quoting *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982) and citing

---

[2] Title 29 U.S.C. § 207(a)(1) provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

[3] Having made this concession, the Court does not understand why Defendants go **[*9]** on to argue that "there is a genuine issue of material fact as to whether the extra hours Plaintiff was working were 'necessarily and primarily for the benefit of the employer' or were, as Defendants argue, primarily for the financial benefit of Plaintiff." (Defs.' Br. 15.) This line of argumentation is necessarily addressed at whether the FLSA's protections apply to Plaintiff; that is, whether Plaintiff was an employee employed by an employer. 29 U.S.C. § 203(e)(1) (defining "employee" as "any individual employed by an employer"); *id.* § 203(g) (defining "employ" as "to suffer or permit to work"). Despite being a red herring, this argument is easily disposed of, as logic suggests that if Plaintiff's work was not of benefit to the employer, Galliers would not have spent the extra money to hire him.

[4] Title 29 U.S.C. § 216(b) provides, in pertinent part:

> Any employer who violations the provisions of section 6 or section 7 of this Act shall be liable to the employee . . . in the amount of their . . . unpaid overtime compensation . . . , and in an additional equal amount as liquidated damages.

Case 2:16-cv-12536-GAD-APP ECF No. 89-10, PageID.1933 Filed 12/29/17 Page 4 of 7

Page 4 of 7
2015 U.S. Dist. LEXIS 95938, *10

29 U.S.C. § 260[5]). "To be relieved of liability for liquidated damages, the employer 'has the "substantial burden" of proving to the trial court that its acts giving rise to the suit are *both* in good faith *and* [*11] reasonable.'" *Dole*, 942 F.2d at 968 (emphasis in original) (quoting *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990)). "In the absence of such proof[, however,] a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *Elwell*, 276 F.3d at 840 (quotation omitted).

Defendants contend that their good faith intention not to violate the FLSA and the reasonableness of their ultimately erroneous belief about whether overtime compensation was required are questions of fact which cannot be resolved by way of summary judgment.[6] Specifically, Defendants claim ignorance of [*12] the law as their basis for invoking the good-faith standard delineated in § 260. Although Galliers repeatedly testified during his deposition that he believed that the overtime compensation component of the FLSA only applied to employees forced to work overtime, as opposed to employees permitted to work overtime, ignorance of the law is not demonstrative of good faith.

---

[5] Title 29 U.S.C. § 260 provides:

> In any action commenced prior to or on or after the date of the enactment of this Act to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 16 of such Act.

[6] The Court notes that Defendants, in opposing Plaintiff's request for liquidated damages, have inserted an utterly irrelevant argument about whether or not the FLSA violation was "willful." (Defs.' Br. 16 ("This Court here is faced with a genuine issue of material fact with regard to the knowledge or negligence of Defendants necessary to establish willfulness to warrant liquidated damages which precludes summary judgment on this issue.").) Whether a FLSA violation was "willful" is only relevant to determining whether a two - or three-year statute of limitations applies. *Dole*, 942 F.2d at 966 ("An ordinary violation of the FLSA is subject to a two-year statute of limitations. . . . However, where a violation is 'willful' a three-year statute of limitations applies.") (quotations omitted).

(*See, e.g.*, Galliers Dep. 28, 53.)

"The good faith standard [*13] under the FLSA is more stringent than it is in many other contexts. Even negligent, as opposed to willful mis-classification of an employee is enough to prevent the application of the good faith exception." *Chao v. First Nat'l Lending Corp.*, 516 F. Supp. 2d 895, 902 (N.D. Ohio 2006). "To prove that it acted in good faith, an employer 'must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions.'" *Martin*, 381 F.3d at 584 (quotation omitted). "The employer has an affirmative duty to ascertain and meet the FLSA's requirements[.]" *Id.*; *Chao*, 516 F. Supp. 2d at 902 (describing an employer's "duty to investigate potential liability under the FLSA") (citation omitted).

This affirmative duty makes sense in light of the authority standing for the proposition that in order to avoid liquidated damages, "a failure to comply with provisions of the Act must be based on objectively reasonable grounds." *Solis*, 345 F. App'x at 38; *Elwell*, 276 F.3d at 842 n.5 ("[A]n employer who acted negligently — but not willfully — in violating the FLSA would not be able to satisfy the objective standard of reasonableness required to demonstrate good faith.") (citation omitted). Thus, contrary to Defendants' suggestion, a FLSA violation "does not have to be intentional for [Plaintiff] to recover liquidated damages[.]" *Martin*, 381 F.3d at 584;[7] *Solis*, 345 F. App'x at 38 ("[D]emonstrating good faith [*14] requires more than the absence of intent or knowledge.") (citation omitted).

In this case, Defendants have failed to demonstrate that they acted in good faith. Specifically, Defendants have failed to point to any evidence rebutting the pertinent deposition testimony indicating that no research or investigation was conducted to determine whether the overtime compensation law applied to Michigan Steel employees.

Galliers testified as follows during his deposition:

> Q: Did you ever do, at anytime (*sic*) do any research about the overtime laws?
> A: No.
> Q: Do you know if anybody in your company ever

---

[7] The Court notes that although *Martin* was a case involving the improper classification of an employee as exempt from FLSA's protections, a panel of the United States Court of Appeals for the Sixth Circuit applied this affirmative inquiry duty to overtime violations in *Solis*. 345 F. App'x at 38.

researched that issue?
A: Nobody else would do it. If anybody was going to, it would be me and I never did.
Q: Okay. Did you ever go to the Department of Labor and ask if you were paying people correctly?
A: No.
. . .
Q: What about the State of Michigan, did you ever go to them and ask?
A: No.

Q: Did you ever before this lawsuit go to a private **[*15]** attorney and ask whether you were paying people properly?
A: No.

(Galliers Dep. 27-28.) Dodge, Plaintiff's supervisor, provided remarkably similar testimony during his deposition:

Q: . . . Did you ever have a discussion with anybody at Michigan Steel about whether not paying time and a half was illegal?
A: No. You mean -- I take that back. Certainly after this has happened.
Q: Before [Plaintiff] quit?
A: No. No. Yeah. I need to qualify that. I guess technically, yes, I have, but every time it was discussed, it was justified that because it was voluntary, it was okay. You didn't -- if you don't -- we weren't requiring the employees to work those extra hours, therefore, it was okay.
Q: Okay. Who did you have those discussions with?
A: Well, Gary, the owner and then Mike, the production manager.
. . .
Q: Okay. Do you know if Michigan Steel ever made any inquiries with the Department of Labor or with the Michigan Wage and Hour Division about whether or not it was legal or not?
A: I don't know if they did or not. . . . I just took [Gary] at his word, Gary's word that if they did it voluntarily, it was fine.

(Dodge Dep. 63-64.)

Having pointed to this uncontroverted testimony on the question of good faith, **[*16]** Plaintiff has discharged his initial summary judgment burden. Defendants have failed to point to any evidence to rebut this testimony or that would create a genuine issue of material fact on the issue of whether Defendants took any affirmative steps to ensure compliance with the FLSA's overtime compensation requirement. The only alleged proof of good faith or reasonableness offered by Defendants is the assertion that once Defendants learned of the violation, they offered Plaintiff monetary compensation. This offer of settlement is irrelevant, as the good faith inquiry is not a retrospective one.

Further undercutting Defendants' argument is that "[i]gnorance of the FLSA requirements is not a defense to liquidated damages." *Chao*, 516 F. Supp. 2d at 902 (citation omitted). Because the overtime requirements of the FLSA do not vary based on whether an employer requires or simply permits an employee to work overtime, it is no excuse that Defendants thought otherwise. 29 U.S.C. § 203(g); 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time."). In other words, ignorance will not exonerate an employer from complying with the FLSA.

There being no genuine dispute of material facts on the issue of whether liquidated damages are proper in this **[*17]** case, Plaintiff is entitled to judgment as a matter of law as to Defendants' liability for liquidated damages.

## C. Defendants are Jointly and Severally Liable to Plaintiff

Plaintiff contends that the Court should enter summary judgment on his claim that Defendants Michigan Steel and Galliers should be held jointly and severally liable to Plaintiff for the FLSA overtime compensation violation.

The FLSA defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole*, 942 F.2d at 965 (citing *Falk v. Brennan*, 414 U.S. 190, 94 S. Ct. 427, 38 L. Ed. 2d 406 (1973)). "'The remedial purposes of the FLSA require the courts to define "employer" more broadly than the term would be interpreted in traditional common law applications.'" *Id.* (quoting *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)); *cf. Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S. Ct. 1344, 1350, 117 L. Ed. 2d 581 (1992) (explaining that the FLSA has broader coverage than ERISA and that FLSA's statutory definitions "stretch[] the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles[]"). Thus, an individual who acts directly or indirectly in the interest **[*18]** of an employer in relation to an employee may be subject to individual liability

under the FLSA. 29 C.F.R. § 791.2(b)(2); *see also Mitchell v. Chapman*, 343 F.3d 811, 827 (6th Cir. 2003) ("This Court has interpreted the FLSA's 'any person who acts, directly or indirectly, in the interest of the employer' language to impose individual liability on private-sector employers.") (citing *United States DOL v. Cole Enters., Inc.*, 62 F.3d 775 (6th Cir. 1995) and *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994)).

In assessing whether a party is an employer within FLSA's broad definition of that term, "'economic reality' controls rather than common law concepts of agency." *Dole*, 942 F.2d at 965 (citing *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33, 81 S. Ct. 933, 936, 6 L. Ed. 2d 100 (1961)). Notably, "'[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Id.* (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). Resolution of the inquiry into whether a party falls within the ambit of the FLSA's definition of "employer" requires a court to assess a variety of factors, such as the individual's position within the company, their ownership interest, and the degree of that individual's "operational control of significant aspects of the corporation's day to day functions, including compensation of employees[.]" *Dole*, 942 F.2d at 965 (quotation omitted). No single consideration is dispositive. **[*19]** *Id.* (quotation omitted).

The record in this case reveals that Galliers, the sole owner of Michigan Steel since 1977, is involved in the business operations of the corporation and that he controls the purse strings of the corporation. *Id.* at 966; (Galliers Dep. 7-8). While his precise title within the company is not entirely clear, he has run the company since its inception. Despite a period of time during which his son was the acting president of the company, this occurred sometime prior to 1998. (Dodge Dep. 27-28.) Further, Galliers testified during his deposition that if anybody was going to research FLSA compliance issues, that responsibility would have fallen on him. (Galliers Dep. 27.)

Galliers also testified that while he does not necessarily make every hiring decision, he reserves the right to "put [his] two cents in[,]" and "generally will do a follow-up interview before [an individual is hired]." (*Id.* at 12-13.) He also played a significant role in hiring Plaintiff, crunching numbers to determine how much Michigan Steel could offer Plaintiff in order to bring him on board. (*Id.* at 15-16.) Indeed, it was Galliers who ultimately extended an offer of employment to Plaintiff. That Galliers may have delegated some decision-making **[*20]** responsibilities to other employees does not, in this Court's opinion, negate a finding that Galliers is an employer as that term is used in the FLSA context. This is particularly true in the face of Defendants' failure to rebut the evidence pointed to by Plaintiff.

Defendants' arguments regarding the impropriety of a finding of joint and several liability are unavailing. First, Defendants argue that Galliers was not responsible for hiring and firing decisions. (Defs.' Br. 19.) However, as explained immediately above, Galliers did participate in personnel decisions. Second, Defendants contend that Galliers did not have control over the day to day operations of Michigan Steel, "particularly while one of his sons was the President." (*Id.*) However, the deposition testimony indicates that Galliers's son was president sometime prior to 1998, approximately seventeen years ago.

Third, and lastly, Defendants cite authority standing for the proposition that whether a party is an employer is a question of fact. (*Id.* (citing *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190 (5th Cir. 1983).) As an initial matter, this citation is misleading, as in the Sixth Circuit, "[w]hether a party is an employer within the meaning of the FLSA is a legal determination." *Dole*, 942 F.2d at 965 (citing, **[*21]** *inter alia, Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) ("The determination of whether a particular factual setting gives rise to coverage under the FLSA is a matter of law.")). Further, Plaintiff has discharged his initial summary judgment burden using the materials specified in Federal Rule of Civil Procedure 56(c), meaning the burden of defeating summary judgment has shifted to Defendants. Defendants must point to specific material facts — beyond mere allegation — that give rise to a genuine issue of law for trial. *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514. A mere scintilla of evidence supporting the non-movant's claim will not prevent summary judgment; rather, there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011). Defendants have not pointed to any such evidence.

Having failed to discharge their summary judgment burden, the Court concludes that Galliers is an employer within the meaning of the FLSA and that he may, therefore, be held jointly and severally liable with Michigan Steel for the FLSA violation involved in this case.

## IV. CONCLUSION AND ORDER

For the reasons set forth herein, the Court concludes that Plaintiff is entitled to summary judgment as to Defendants' liability for the FLSA overtime wage as well as for liquidated damages. Defendants Michigan Steel and Gary **[*22]** Galliers shall be jointly and severally liable to Plaintiff as joint employers under the FLSA.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.

Dated: July 23, 2015

/s/ PATRICK J. DUGGAN

UNITED STATES DISTRICT JUDGE

**End of Document**