## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHAD MCFARLIN, Individually and on
behalf of similarly situated persons,

        Plaintiff,

v

THE WORD ENTERPRISES, LLC,
THE WORD ENTERPRISES
HASLETT,LLC, THE WORD
ENTERPRISES LANSING, LLC, THE
WORD ENTERPRISES OWOSSO, LLC,
THE WORD ENTERPRISES PERRY, LLC,
THE WORD ENTERPRISES ST. JOHNS,
LLC, DITTRICH INVESTMENTS II, INC.,
and KEVIN DITTRICH,

        Defendants.

_____/

No. 2:16-cv-12536-GAD-APP

Hon. Gershwin A. Drain

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

For the reasons stated in the accompanying Brief in Support of Defendants' Motion for Summary Judgment, and upon the record in this case, Defendants respectfully request that this Honorable Court enter summary judgment in their favor, and dismiss the claims contained in the First Amended Complaint in their entirety, and with prejudice, together with such other and further relief as this Court may deem just and appropriate.

Dated:   January 2, 2018                 Respectfully submitted,

                                         /s/Jeffrey S. Theuer (P44161)
                                         Jeffrey S. Theuer (P44161)
                                         Warren H. Krueger (P74115)
                                         LOOMIS, EWERT, PARSLEY,
                                         DAVIS & GOTTING, P.C.
                                         124 West Allegan, Suite 700
                                         Lansing, MI 48933
                                         517-482-2400
                                         jstheuer@loomislaw.com
                                         Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHAD MCFARLIN, Individually and on
behalf of similarly situated persons,

             Plaintiff,

v

THE WORD ENTERPRISES, LLC,
THE WORD ENTERPRISES
HASLETT,LLC, THE WORD
ENTERPRISES LANSING, LLC, THE
WORD ENTERPRISES OWOSSO, LLC,
THE WORD ENTERPRISES PERRY, LLC,
THE WORD ENTERPRISES ST. JOHNS,
LLC, DITTRICH INVESTMENTS II, INC.,
and KEVIN DITTRICH,

             Defendants.

_____/

No. 2:16-cv-12536-GAD-APP

Hon. Gershwin A. Drain

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## CONCISE STATEMENT OF ISSUES PRESENTED

Whether Defendants are entitled to Summary Judgment because Representative Plaintiff McFarlin was paid the applicable minimum wage based on Plaintiff's expert's vehicle expense calculation of $0.33/mile, and therefore cannot prove a minimum wage violation under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.,* or Michigan law?

Defendants say: "Yes"

Plaintiff says: "No"

## **TABLE OF CONTENTS**

CONCISE STATEMENT OF ISSUES PRESENTED ........................................... ii

TABLE OF CONTENTS…………………………………………………….... iii

INDEX OF AUTHORITIES, AND CONTROLLING OR MOST APPROPRIATE
AUTHORTY……………………………………………………………….. iiv

INDEX OF EXHIBITS ............................................................................... vi

INTRODUCTION AND CASE STATUS……………………………………1

STATEMENT OF FACTS ............................................................................3

ARGUMENT ...............................................................................................10

    A.    Delivery Driver Compensation Met or Exceeded Applicable Minimum
Wage using the $0.33 Cent Per Mile Reimbursement Rate Proposed by
Plaintiff's Expert ......................................................................13

CONCLUSION ...........................................................................................24

# INDEX OF AUTHORITIES
## AND CONTROLLING OR MOST APPROPRIATE AUTHORTY

<u>**Cases:**</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)…………………………..12-13

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680,
66 S.Ct. 1187, 90 L.Ed. 1515 (1946)…………………………….....13

*Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204,
109 S.Ct. 468, 102 L.Ed.2d 493 (1988)……………………………...23

*Brimstone R. Co. v. United States,* 276 U. S. 104,
48 S.Ct. 282, 72 L.Ed.2d 487 (1928)………………………..….……23

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548,
91 L.Ed.2d 265 (1986)……………………………………………12-13

*Gattuso v. Harte-Hanks Shoppers, Inc.,*
169 P.3d 889 (Cal. 2007)…………………………………………15, 23

*Kilgore v. Outback Steakhouse of Florida, Inc.,*
160 F.3d 294 (6th Cir. 1998)………………………………….….22

*Myers v. The Copper Cellar Corp.,* 192 F.3d 546 (6th Cir. 1999)…....13

*O'Brien v. Ed Donnelly Enterprises, Inc.,*
*575 F.3d 567 (6th Cir. 2009)*..................................................................9

*Perrin v. Papa John's Int'l.* ("*Perrin II*"),
213 U.S. Dist., LEXIS 181749 (E.D. Mo., Dec. 31, 2013)………..…14

*Perrin v. Papa John's Int'l Inc.*, 114 F.Supp.3d 707
(E.D. Mo. 2015)……………………………………………………..22-23

*Thiessen v. GE Capital Corp.,* 267 F.3d 1095 (10th Cir. 2001)……….2

iv

*Tyson Foods, Inc. v. Bouaphakeo,* 136 S.Ct. 1036,
194 L. Ed. 2d 124 (2016)…………………………………………….12

*U.S. Department of Labor v. Cole Enterprises, Inc.,*
62 F.3d 775 (6th Cir. 1995)…………………………………………..17

**Statutes:**

MCL 408.381 et seq., as amended by the Michigan Workforce
Opportunity Wage Act ("WOWA"), MCL 408.411, et seq. ……………1

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq. …...passim*

Section 2802 of the California Labor Code
(Stats. 1937, Ch. 90, Sec. 2802)……………………………………..15

MCL 408.414d(1)……………………………………………....……..23

29 U.S.C. § 203(m)……………………………………...……19-20, 23

29 U.S.C. § 216(b)………………………………………………………..2

**Other:**

Fed.R.Civ.P. 56…………………………………………………….10

Fed.R.Civ.P. 23…………………………………………………..2

29 C.F.R. § 531.35……………………………………………....16

29 C.F.R. § 778.217(a)………………………………………….17

29 C.F.R. § 778.217(d)………………………………………….17

DOL Handbook § 30d08…………………………………..22-23

DOL Opinion Letter FLSA2006-21 (June 9, 2006)…………………….23

DOL Field Assistance Bulletin No. 2016-4 (December 15, 2016)……..23

## INDEX OF EXHIBITS TO BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

| Exhibit | Description |
|---|---|
| DX 1 | McFarlin – Vehicle Registration and Insurance |
| DX 2 | McFarlin Deposition |
| DX 3 | McFarlin Insurance Policy |
| DX 4 | TWE-Haslett, LLC Entity Doc. |
| DX 5 | TWE-Perry, LLC Entity Doc. |
| DX 6 | TWE-St. Johns, LLC Entity Doc. |
| DX 7 | TWE, LLC Entity Doc. |
| DX 8 | TWE-Lansing. LLC Entity Doc. |
| DX 9 | TWE-Owosso, LLC Entity Doc. |
| DX 10 | M. Follman Affidavit |
| DX 11 | Plaintiff's Initial Disclosures |
| DX 12 | Discovery Requests to Plaintiff |
| DX 13 | Plaintiff's Preliminary Witness List |
| DX 14 | Lauria Report – Plaintiff's Expert |
| DX 15 | McFarlin Compensation Chart |
| DX 16 | Dittrich Deposition |
| DX 17 | Follman Deposition |
| DX 18 | *Perrin v. Papa John's Int'l. Inc.,* 213 U.S. Dist., LEXIS 181749 (E.D. Mo., Dec. 31, 2013) |

## INTRODUCTION AND CASE STATUS

Plaintiff Chad McFarlin filed the Complaint in this matter on July 6, 2016 [Doc. #1], alleging federal and state minimum wage violations after deducting employee car expenses from received wages earned while working as a pizza delivery driver for a Hungry Howie's Pizza store in Perry, Michigan. The original Complaint named six businesses and one individual as Defendants. It is undisputed that only three of the Defendant Companies were operational during the period covered by the Complaint – The Word Enterprises-Perry, LLC ("TWE-Perry"), The Word Enterprises-Haslett, LLC ("TWE-Haslett"), and The Word Enterprises-St. Johns, LLC ("TWE-St. John's"), which itself closed in 2017.

Count I of the Complaint alleged that Defendants paid their delivery driver employees below federal minimum wage after deducting the benefit to their employer of operating each employee's personal vehicle to make deliveries [Doc. #1]. Count II of the Complaint asserted similar violations of the Michigan Minimum Wage Law, MCL 408.381 et seq., as amended by the Michigan Workforce Opportunity Wage Act ("WOWA"), MCL 408.411, *et seq*. Defendants filed an Answer denying liability, and asserting that even after accounting for the benefit to the employer of using employees' personal vehicles for delivery, employees' compensation was at, or exceeded, the applicable minimum wage [Doc. #19].

Solely to avoid litigation costs, Defendants stipulated to the initial conditional certification of a driver group for collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Defendants reserved the right to request decertification of this group under the procedures allowed by the FLSA, and Defendants intend to do so prior to trial in this case.[1] On March 21, 2017, this Court entered the Stipulated Proposed Order of the parties, conditionally certifying an FLSA collective action consisting of the following:

> All current and former delivery drivers employed by Defendants from July 6, 2013, to the present.

Order, dated March 21, 2017 [Doc. #31], granting Stipulation for Conditional Certification and Court-Approved Notice Pursuant to 29 U.S.C. § 216(b).

On June 13, 2017, Plaintiff filed a Motion to Certify Class [Doc. #38], requesting certification of a Fed.R.Civ.P. 23 class consisting of 106 delivery drivers employed by the three operational entities. On October 5, 2017, this Court entered its Opinion and Order Granting Plaintiff's Motion to Certify Class [Doc. #83], certifying a class of pizza delivery driver employees employed by Defendants TWE-Perry, TWE-Haslett, and TWE-St. John's.

---

[1] FLSA collective action certification is a two-step process. Initial certification comes at the notice stage, where courts use a lenient standard to determine whether a plaintiff group is similarly situated. *See Thiessen v. GE Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir. 2001). After discovery, the court makes a final certification using a stricter standard. *Id.,* at 1102-03.

2

On July 13, 2017, Plaintiff filed a Motion for Leave to File First Amended Complaint [Doc. #43], in order to add numerous proposed additional Defendants to the case and amend the Scheduling Order. On September 15, 2017, this Court issued its Opinion and Order Granting in Part and Denying in Part Plaintiff's Motion for Leave to File First Amended Complaint [Doc. #73]. The Court's Order authorized Plaintiff to file an amended pleading adding a single additional Defendant, Dittrich Investments II, Inc. ("DI-II"). On September 19, 2017, Plaintiff filed his First Amended Collective and Class Action Complaint [Doc. #75], adding Defendant DI-II to the FLSA Collective Action Claim. Defendants filed their Answer to First Amended Collective and Class Action Complaint [Doc. #82] on September 29, 2017, denying liability, and asserting that driver employees were paid an amount equal to or in excess of the applicable minimum wage, even after deducting the benefit to the employer of drivers using personal vehicles for deliveries.

Defendants respectfully request entry of summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, based on the following ground:

    A.    The compensation structure used by Defendants resulted in total compensation to driver employees which met or exceeded the applicable minimum wage, even using the inflated $0.33 cent per mile reimbursement rate proposed by Plaintiff's expert.

## STATEMENT OF FACTS

The named Plaintiff, Chad McFarlin, was employed only by TWE-Perry, from

3

July 21, 2015 to September 1, 2016, when he voluntarily quit. He was never employed by TWE-Haslett, TWE-St. Johns, or DI-II, and worked for TWE-Perry for far less than half the period for which Plaintiff seeks alleged damages in this case. Further, McFarlin did not incur most of the categories of driver expense costs sought by the class in this case. He did not own the vehicle he used while employed by TWE-Perry, nor is he listed as the named insured on that vehicle's insurance policy (**DX 1** – vehicle registration and insurance in the name of non-party Christina Baumchen). McFarlin admitted at his deposition that his wife purchased the car before they were married, is the titled owner of the vehicle, and she used it to drive to her own full-time job at Meijer during the day. McFarlin Dep., at 18-20 (**DX 2**).[2]

---
[2]

```
15   Q.   What type of a vehicle did you use for deliveries
16        while you worked at Hungry Howie's?
17   A.   Chevy Sonic.
                    ***
20   Q.   Who purchased the car?
21   A.   My wife.
22   Q.   And is your wife Christina Baumchen, is that how it's
23        said?
24   A.   Yeah.
25   Q.   How long have you been married?
                    19
 1   A.   Since August of 2015.
 2   Q.   Did you buy the car, or did she buy the car before you
 3        were married?
 4   A.   Yes.
 5   Q.   Is your wife employed?
 6   A.   Yes.
 7   Q.   Was she employed while you were working at Hungry
```

Additionally, the insurance policy on the vehicle contained exclusions from coverage when the vehicle was used for food deliveries, such as when McFarlin worked for TWE-Perry (**DX 3,** Bates Nos. 0137-38, 0147-49, 0151-55) (Progressive Insurance Policy, excluding coverage "for retail or wholesale delivery, including but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food;"). Therefore, the vehicle used by McFarlin was not owned by him, he was not on the financing documents, and vehicle was not legally insured while he used it

---

```
8       Howie's?
9   A.   Yes.
10  Q.   What did she do?
11  A.   She works at Meijers.
12  Q.   Where is the Meijers located?
13  A.   Owosso.
14  Q.   Do you know how far that is from your house?
15  A.   I don't know.
16  Q.   What does she do at Meijer?
17  A.   She's a gas station clerk.
18  Q.   Is that a full-time job?
19  A.   Yes.
20  Q.   Was it full-time while you were working at Hungry
21       Howie's?
22  A.   Yes.
23  Q.   How did she get to work?
24  A.   She's uses the car.
25  Q.   Was your delivery scheduled, did you work in the
                      20
1        evenings?
2   A.   Yes.
3   Q.   And she worked during the day?
4   A.   Yes.
```

DX 2, at 18-20.

5

during his employment with Defendant delivering food due to the exclusions.

Each Defendant business entity is a separately formed limited liability company (**DX 4-9**) organized pursuant to Michigan law. Three of them, The Word Enterprises, LLC ("TWE"), The Word Enterprises – Lansing, LLC (TWE-Lansing"), and The Word Enterprises – Owosso, LLC ("TWE-Owosso"), have not operated in many years and had no employees during the period in which Plaintiff seeks damages (**DX 7-9**). Although this information was disclosed to Plaintiff, and Plaintiff does not seek damages for any employees of the non-operational entities, Plaintiff has not sought to dismiss these non-operational entities from the lawsuit, or remove them from the caption.

Defendants assert Plaintiff's case is based on a misunderstanding of how driver employees are paid. Drivers receive a compensation package that includes a cash wage, cash tips, credit card tips, and a driver commission or delivery fee, all of which together can significantly exceed the minimum wage. The Defendant companies did not apply the tip credit in the manner that Plaintiff may be accustomed to in other cases.

Many delivery pizza companies pay a tipped employee wage (which can currently be as low as $2.13/hour under federal law and $3.38/hour in Michigan). They then apply all employee tips against the hourly rate, and adjust the tipped wage up or down so that the employee receives the exact minimum wage, without regard

6

to vehicle expenses. These employees may then receive a flat fee per mile or delivery based on a model intended to reimburse theoretical vehicle costs. Some of these cases are discussed in the Argument section below. That is NOT how these Defendants compensated their respective employees. Driver employees of TWE-Perry, TWE-Haslett, TWE-St. John's and DI-II received an hourly cash wage, plus they kept all cash and credit card tips. In addition, they also received a per delivery fee or commission which differed between the TWE-Perry company, and the other Defendant companies. The total compensation was intended to cover minimum wage and any employee expense obligations.[3] The compensation for each entity was as follows:

TWE-Perry Compensation. In Perry, before November 2014, drivers received minimum wage plus a $0.75 delivery fee for each delivery (there could be multiple delivery fees earned on a single delivery run), but the delivery fee was $1.75 for each delivery in the City of Laingsburg, and drivers kept all tips (whether cash or by credit card). After November 2014, Perry drivers received a cash wage of $5.00/hour, plus a per delivery fee of $0.75, $1.75/delivery (later raised to $2.25/delivery) to

---

[3] See Dittrich dep. (6/19/2017) **(DX 16)**, at 65-66 (vehicle expenses are "not reimbursed. They [drivers] have compensation on a nightly basis."), at 89-90 ("We could be very specific and say with hourly wage, with tips, either through credit card or their cash that they now have to let us know nightly, the run charge, or when you take those variables into play, they always make more than minimum wage.").

7

Laingsburg, plus all cash or credit card tips. There was no downward adjustment made to the cash wage for the tips or the delivery fees – the employees kept everything, and could earn substantially more than minimum wage. Additionally, prior to the payday April 7, 2016, due to a calculation formula error by an outside accountant, drivers received double credit card tips. When drivers were not on a delivery, they clocked-in as in-store employees and were paid the applicable minimum wage. Defendants assert that all driver employees received more than the minimum wage during the period of this lawsuit (**DX 10** – Affidavit of Michele Follman, ¶ 8 – 11).

TWE-Haslett, TWE-St. Johns, and DI-II Compensation. Haslett, St. Johns, and DI-II drivers received similar compensation, except that there was no Laingsburg delivery fee. They received a $.75/delivery fee for each delivery (multiple delivery fees could be earned on a single run), plus an hourly wage, and all cash and credit card tips. Defendants assert that these employees also received more than the minimum wage throughout the period of this lawsuit. (DX 10).

Because Plaintiff misapprehends how these employees were paid, Plaintiff's analysis of employee compensation by his expert is inaccurate. Plaintiff's expert, Paul Lauria of Mercury Associates, was not disclosed in Plaintiff's Initial Disclosures (**DX 11**), in response to discovery requests specifically requesting identification of Plaintiff's experts (**DX 12**, Int. 3), or in Plaintiffs' Preliminary

Witness List (**DX 13**, p. 3). The first time Defendants heard of Mr. Lauria was when they received service copies of Plaintiff's Motion for Class Certification, to which Lauria's Report was attached as an exhibit. Nonetheless, setting aside issues of admissibility for purposes of this Motion only, Mr. Lauria estimated that it cost Plaintiff McFarlin $0.33/mile to operate the vehicle he used, without apparently accounting for the fact that Mr. McFarlin did not own or insure that vehicle himself (DX 1), or that he was not operating it legally due to the insurance exclusion. *See* Lauria Report, **DX 14**. Even under Lauria's analysis, Plaintiff McFarlin still received total compensation in excess of the minimum wage including the Lauria mileage rate. Defendants assert that the average cost to operate a vehicle was much lower, between $.14 - $.19/mile during 2013-16.

An illustration of McFarlin's compensation based on actual payroll records and delivery mileage may be seen in the two-week pay period which was paid on July 30, 2015 (*see* **DX 15**)[4]. In that period, Mr. McFarlin worked a total of 29.48 hours, 9.11 hours in-store and 20.37 on delivery. DX 15. He was paid the then-

---

[4] It should be noted that DX 15 is offered as a pedagogical device to organize information and to aid in the Court by summarizing total wages, other compensation, and miles driven for McFarlin. *See O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 601, n.10 (6th Cir. 2009) (holding that trial courts have discretionary authority to consider such devices in order to clarify and simplify complex testimony or other information). Upon information and belief, the payroll records produced during discovery which reflect actual compensation amounts are not disputed in this case, and are therefore not attached.

minimum wage of $8.15/hour in-store, and $5.00/hour on delivery. At $8.15/hour, McFarlin's total minimum wage obligation based on 29.48 hours worked was $240.26 ($8.15 x 29.48 hours). He actually received regular hourly wages of $176.10, plus credit card tips of $64.17, plus the erroneous double credit card tip compensation of $64.17, plus averaged cash tips of $95.36, plus delivery fees of $44.75, for total compensation of $444.55. This means that **McFarlin received $204.29 ($444.55 - $240.26) more than minimum wage** during this period. Based on McFarlin's delivery schedule, he drove 436.65 miles during the two weeks (DX 15, line 1; DX 10, ¶12 – Follman Affidavit). **This results in per mile compensation of $0.47/mile ($204.29 ÷ 436.65 miles), well above the $0.33 per mile expense proposed even by Plaintiff's own expert.**

Defendants assert that Plaintiff has no damages even based on his own expert's inflated per mile expense assessment, and request entry of Summary Judgment in their favor.

## ARGUMENT

Plaintiff McFarlin received total compensation sufficiently in excess of the applicable minimum wage to more than cover the reasonably approximate vehicle expenses from his employment. *See* discussion of McFarlin's compensation above.

The Lauria Report is based on factually incorrect assumptions. For example, the report fails to account for the fact that more than one delivery charge can be

earned on a single run. This single factor is the basis for all Lauria's calculations because he incorrectly assumes that is the only compensation which can cover vehicle costs. Lauria also makes guesses at maintenance costs, repair costs, the number of miles driven by McFarlin for personal reasons as opposed to delivery miles (which again is a basis for other calculations). The only data in the report which are not based on a guess are, apparently, McFarlin's monthly insurance cost, and Michigan gas prices. Even use of those numbers is flawed since McFarlin did not own his vehicle or insure it (DX 1), and McFarlin worked in Perry, not throughout the state where gas prices vary significantly. Perhaps most significantly, Lauria's report is based on an incorrect guess at McFarlin's compensation, despite presumably having access to his own client's actual compensation information. Lauria fails to use **any** actual data regarding McFarlin's compensation in his analysis. As a result, Lauria cannot support any conclusion regarding whether McFarlin was underpaid in this case. At most, his report is an overstated guess as to the total cost per mile to drive a hypothetical delivery vehicle, based on estimated costs, most of which are not supported by the actual record. Further, Lauria's estimate fails to account for the fact that many of the cost elements upon which he relies to inflate his numbers are fixed costs which the employee would incur regardless of whether they worked as a delivery driver, such as insurance, car loan costs, etc. These categories of costs would be incurred by Plaintiff, or more

accurately his wife, even if he never worked as a delivery driver and therefore do not arise from Plaintiff's employment. Statistical proof may be used in class action cases. *See Tyson Foods, Inc. v. Bouaphakeo,* 136 S.Ct. 1036, 1045-49, 1050-51, 194 L. Ed. 2d 124 (2016). However, the basis for such proof must be admissible and supported by the factual record. *Id.* The Lauria Report is unreliable and should be rejected by the Court. However, for purposes of this Motion, using even Lauria's flawed $0.33/mile reimbursement rate, Plaintiff cannot show damages or a violation of law as alleged.

### Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving

party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505, 91 L.Ed.2d 202.

In this case, Plaintiff has the burden of proving by a preponderance of the evidence that he "performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *Myers v. The Copper Cellar Corp.,* 192 F.3d 546, 551 (6th Cir. 1999).

### A. Delivery Driver Compensation Met or Exceeded Applicable Minimum Wage using the $0.33 per Mile Reimbursement Rate Proposed by Plaintiff's Expert

Plaintiff's claim in this case is based entirely on an artificial and false attempt to classify a limited portion of the total compensation paid to Defendants' employees as a driver reimbursement payment. However, Defendants have never had a reimbursement policy, or a specifically designated element of compensation dedicated to driver reimbursement expenses. Instead, Defendants rely on the total compensation paid to their driver employees to comply with minimum wage requirements. *See e.g.* Dittrich dep. (6/19/2017) (DX 16), at 65-66 (vehicle expenses are "not reimbursed. They [drivers] have compensation on a nightly basis."), at 89-

90 ("We could be very specific and say with hourly wage, with tips, either through credit card or their cash that they now have to let us know nightly, the run charge, or when you take those variables into play, they always make more than minimum wage."); Follman Dep. (6/19/2017), at 32 (**DX 17**) ("Q. Why wouldn't – how would they get paid minimum wage based on the five dollar per hour out wage? A. They're compensated seventy-five cents per delivery run in Perry. When they take a Laingsburg delivery, they're given an extra dollar. And then they also receive tips in the form of credit cards or cash."). In this way, this case is materially different from other delivery driver cases, which have been cited by Plaintiff in this litigation. For example, in *Perrin v. Papa John's Int'l.* ("*Perrin II*"), 213 U.S. Dist., LEXIS 181749 (E.D. Mo., Dec. 31, 2013) (**DX 18**), the class size was 29,000 driver employees, and over 4,000 had opted into an already conditionally-certified FLSA collective action. The *Perrin* defendants themselves acknowledged that they created a reimbursement formula which was "meant as compensation for costs associated with the use of their [driver employees'] personal vehicles to make deliveries." *Id.*, at 5. The reimbursement formula in *Perrin* had been designed by an industry consultant using uniform methodology. The Court described the creation of this formulas follows: "With the assistance of an industry consultant, Defendants developed a delivery-related reimbursement formula to calculate the fixed and variable costs of operating the average Papa John's vehicle." *Id.*, at 5-6. Papa John's

used a "uniform methodology" based on "estimated factors." *Id.*, at 6. That reimbursement formula was specifically created by the Defendant, Papa John's, to reimburse driving expenses. It was the adequacy of Papa John's dedicated reimbursement formula that the Plaintiffs sought to attack using expert witness testimony and generalized proof applicable to a 29,000 Plaintiff class. In this case, actual compensation, delivery information, and time records, exist for each of these employees. Most importantly, no dedicated reimbursement formula exists in this case to challenge with industry aggregate or estimated data. The only issue is whether each individual employee received at least minimum wage compensation based on their actual compensation, delivery, and time records. This case is not "similar" to *Perrin* in that sense.

With respect to California precedent, there is a significant difference in California law with respect to reimbursement of employee expenses. Section 2802 of the California Labor Code (Stats. 1937, Ch. 90, Sec. 2802) requires an employer to indemnify or reimburse their employees "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…" In other words, California employers are required to have a reimbursement policy *specifically* to reimburse employees for expenses incurred in using their own vehicles. *See e.g. Gattuso v. Harte-Hanks Shoppers, Inc.*, 169 P.3d 889, 900 (Cal. 2007) ("the employer must provide some method or formula to identify the amount

of the combined employee compensation payment that is intended to provide expense reimbursement."). California provides that reimbursement policies are mandatory, rather than merely permissive, and employers must separately account for employee expenses apart from compensation.

There is no Michigan or federal law requirement for an employer to reimburse delivery driver expenses. Reimbursement of expenses is implicated only by a regulation issued by the U.S. Department of Labor ("US DOL"), which states that "[t]he wage requirements of [the FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer … the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35. As interpreted by the DOL, a kick-back occurs when the cost of an employee's vehicle expenses used for the benefit of the employer "cuts into the minimum or overtime wages required to be paid him under [the FLSA]." *Id.*

Further, only the expenses incurred by the employee for the benefit of the employer may be considered for treatment as reimbursement expense. Otherwise, any excess is regular wages. The general rule is stated by the DOL as follows:

> (a) *General rule.* Where an employee incurs **expenses on his employer's behalf** or where he is required to expend sums solely by reason of action taken for the convenience of his employer, section 7(e)(2) is applicable to reimbursement for such expenses.

29 C.F.R. § 778.217(a) (emphasis added). *See also* 29 C.F.R. § 778.217(d) (reimbursement expenses must "be expenses incurred by the employee on the employer's behalf or for his benefit or convenience.").

The effect of these regulations is that the expense must be for the benefit of the employer, and if it qualifies as a reimbursement expense, it is considered a deduction from total compensation paid to the employee for purposes of determining compliance with minimum wage. In other words, an employee's expenses do not raise the dollar amount of the employer's minimum wage obligation for that employee. Instead, expenses are applied as a deduction from total compensation paid to the employee, and the minimum wage is net of reimbursable expenses. For purposes of this case, this means that total compensation paid to each employee must at least equal the applicable minimum wage <u>after</u> reimbursable expenses have been deducted. In the 6th Circuit, "an employer meets the minimum wage requirements if the total weekly wage paid is equal to or greater than the number of hours worked in the week multiplied by the statutory minimum hourly rate." *U.S. Department of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 780 (6th Cir. 1995).

In the present case, using the *Cole* methodology, and McFarlin's July 30, 2015 compensation information from DX 15, McFarlin's minimum wage requirement was $240.26 ($8.15 x 29.48 hours), plus $144.09 in expenses based on the Lauria calculation of $0.33/mile x 436.65 miles. This totals $384.35. McFarlin's total

compensation during this period was $444.55, well in excess of minimum wage even under Plaintiff's expert's inflated methodology. *See* **DX 15**.

Total compensation received by Defendants' delivery driver employees consisted of four separate elements: (i) a statutory cash wage for tipped employees, (ii) credit card tips processed through the employer's credit card payment system, (iii) cash tips received directly by the driver, and (iv) a per-delivery amount which ranged from $0.75 to $2.25, depending on the location of the delivery and the year, sometimes called a "driver commission." *See e.g.* McFarlin Compensation Summary, at DX 15. It is uncontested in this case that drivers received actual total compensation well in excess of the minimum wage. Plaintiff improperly attempts to carve out portions of total compensation to claim that expense reimbursement was not reasonably approximate. However, a proper accounting of actual compensation shows that no minimum wage violation can be shown as a matter of law.

Plaintiff McFarlin is the only representative Plaintiff in this case. Therefore, as the representative Plaintiff, the class is bound by the basic principles underlying McFarlin's claim. As shown on DX 15, McFarlin received total compensation during the term of his employment in the amount of the minimum wage, plus $0.47 per mile based on actual miles driven. The report of Plaintiff's expert (the "Lauria Report"), attached as DX 14, concludes that McFarlin should have been compensated for vehicle reimbursement expenses at the rate of $0.33 per mile. DX

18

14, at 24 ("The average cost per mile for Mr. McFarlin's vehicle ... is \$0.33. In my opinion, this is the minimum amount The Word should have reimbursed Mr. McFarlin ...."). Defendants object to Mr. Lauria's methodology and conclusions, but for purposes of this summary judgment motion only, Plaintiff's own expert has concluded that McFarlin is owed vehicle reimbursement at a rate less than the amount covered by his actual compensation. Plaintiff has no compensable damages in this case by Plaintiff's own expert accounting.

## 1. Application of Tip Credit

Plaintiffs apparently take the position that the tip credit authorized by 29 U.S.C. § 203(m) cannot be used as a credit against vehicle expense reimbursement. That position is an incorrect statement of law under applicable authority. Defendants are entitled to apply a portion of the tip credit to the expense reimbursement because they paid a cash wage in excess of the minimum cash wage allowed by the FLSA. There is also a second reason the tip credit covers expenses. Plaintiff asserts he was paid less than the applicable minimum wage because expenses effectively reduced his wages below the minimum wage threshold. There is no independent obligation for Defendants to reimburse employee expenses. Therefore, the tip credit allows an employer to comply with minimum wage requirements after any employee expenses have been deducted. The minimum wage is effectively net of expenses. As a result, there is no violation where tips plus total cash compensation are at least equal to the

applicable minimum wage plus employee expenses. Based on the actual compensation paid to Plaintiff McFarlin, which exceeds the reimbursement rate of $0.33 per mile calculated by Plaintiff's own expert, no violation can be shown in this case.

The tip credit is set out in 29 U.S.C. § 203(m) as follows:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such an employee by the employee's employer shall be an amount equal to –
>
> > (1) the cash wage paid such employee which for purposes of such determination shall not be less than the cash wage required to be paid such an employee on August 20, 1996 [$2.13 per hour]; and
> >
> > (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

29 U.S.C. § 203(m). This provision also requires that a tipped employee be "informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee...." 29 U.S.C. § 203(m). In this case, McFarlin knew how he was paid, kept all his tips, and acknowledged that he was informed of the tip credit through a posted notice:

```
                    15
22   Q.   When you were hired at Hungry Howie's in Perry were
23        you told how you would be compensated?
24   A.   Yes.
25   Q.   Were you told you would receive an hourly wage?
```

20

16

1  A.   Yes.
2  Q.   Were you told you would receive a delivery fee?
3  A.   Yes.
4  Q.   Were you told you would receive tips?
5  A.   Yes.
6  Q.   When you worked at Hungry Howie's in Perry did you
7        keep all your tips?
8  A.   Yes.

\* \* \*

18  Q.   Okay.  So when someone paid with a credit card, um,
19        how would you get the tip money from that credit card?
20  A.   At the end of the night all the drivers were cashed
21        out, and so they would add that up at the end of the
22        night.
23  Q.   Okay.  And you received some tips in cash, correct?
24  A.   Correct.
25  Q.   And did you keep the cash?

17

1  A.   Yes.
2  Q.   And you didn't turn any of it in, you kept it all?
3  A.   Correct.

\* \* \*

18

3  Q.   Do you recall seeing posted employment notices on the
4        wall at the Perry location?
5  A.   Could you repeat that?
6  Q.   When you worked at the Perry location, do you recall
7        seeing Department of Labor notices on the wall?
8  A.   Yes.
9  Q.   Do you recall one describing what's called a tip
10       credit?
11 A.   Yes.

*See* McFarlin Dep., at 16-18 (DX 2). Unlike some other circuits, the Sixth Circuit

holds that employers are not obligated to explain the tip credit, but must simply

inform employees of its intent to take a tip credit toward the employer's minimum

21

wage obligation. *See Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 298-99 (6th Cir. 1998) ("we conclude that an employer must provide notice to the employees, but need not necessarily 'explain' the tip credit as argued by the plaintiffs."). Notice is, therefore, not at issue in this case.

With respect to the amount of the tip credit, precedent holds that employers that pay more than the amount of the minimum tipped cash wage may apply the difference to employee expenses. *See e.g. Perrin v. Papa John's Int'l Inc.*, 114 F.Supp.3d 707 (E.D. Mo. 2015) (*citing* DOL guidance documents in effect during the period of McFarlin's employment). The *Perrin* Court noted two DOL guidance documents, including the DOL Handbook, which gave examples showing that where an employer pays a cash wage above the minimum tipped cash wage, the employer may still take the maximum tip credit, and apply the difference to offset employee expenses. In describing the DOL Handbook, the *Perrin* Court acknowledged this principle as follows:

> The DOL Handbook § 30d08 suggests that employers may pay more than the minimum cash wage for tipped employees and still take the maximum tip credit to offset deductions for expenses that would otherwise cut into minimum wage.

*Perrin v. Papa John's Int'l., Inc.*, 114 F.Supp.3d at 728.[5] *See also Gattuso v. Harte-Hanks Shoppers, supra,* 169 P.2d at 901 (Holding in interpreting the California mandatory reimbursement statute "[w]e find nothing in the language of [the statute] that prohibits an employer from discharging its reimbursement obligations . . . by increases in base salary or commission rates.").

Plaintiff's claims in this case relate only to payment of minimum wage. Delivery drivers received $5.00 per hour as their tipped cash wage while making deliveries. This exceeds the minimum tipped cash wage of $2.13 per hour under federal law and $3.38 (for 2017) under Michigan law. *See* 29 U.S.C. §203(m)(1) (federal); MCL 408.414d(1) (Michigan). As shown in DX 15, McFarlin received total compensation, including tips, sufficient to reimburse him at the rate of $0.47 per mile on average for miles actually driven. Given McFarlin's expert's calculation

---

[5] Section 30d08 of the DOL Handbook, and a DOL Opinion Letter FLSA2006-21 (June 9, 2006), which both stated that an employer could pay a cash wage in excess of the minimum cash wage and still claim the maximum tip credit, were purportedly withdrawn on December 15, 2016 in DOL Field Assistance Bulletin ("FAB") No. 2016-4. The date of the FAB was <u>after</u> McFarlin quit his employment with TWE-Perry on September 1, 2016, and <u>after</u> this lawsuit was filed on July 6, 2016. The pre-December 15, 2016 FAB Handbook and Opinion Letter control in this case since they were in effect at the time. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 209, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Brimstone R. Co. v. United States,* 276 U. S. 104, 122, 48 S.Ct. 282, 72 L.Ed.2d 487 (1928) ("The power to require readjustments for the past is drastic. It . . . ought not to be extended so as to permit unreasonably harsh action without very plain words").

of $0.33 per mile to reimburse his expenses, Plaintiff can show no damages in this case.

## CONCLUSION

For the foregoing reasons, and the record in this case, Defendants respectfully request that this Honorable Court enter summary judgment in their favor, and dismiss the claims contained in the First Amended Complaint in their entirety, and with prejudice, together with such other and further relief as this Court may deem just and appropriate.

Dated:    January 2, 2018                    Respectfully submitted,

/s/Jeffrey S. Theuer (P44161)
Jeffrey S. Theuer (P44161)
Warren H. Krueger (P74115)
LOOMIS, EWERT, PARSLEY,
DAVIS & GOTTING, P.C.
124 West Allegan, Suite 700
Lansing, MI 48933
517-482-2400
jstheuer@loomislaw.com
Attorneys for Defendants

24

## <u>CERTICATE OF SERVICE</u>

I hereby certify that true and correct copies of the foregoing Motion and Brief

in Support of Defendants' Motion for Summary Judgment was sent by electronic

mail and first class mail this 2nd day of January  to the following:

> David M. Blanchard
> Blanchard & Walker PLLC
> 221 North Main Street, Suite 300
> Ann Arbor, MI  48104
> blanchard@bwlawonline.com

> /s/Jeffrey S. Theuer
> Jeffrey S. Theuer (P44161)
> LOOMIS,   EWERT,   PARSLEY,
>  DAVIS & GOTTING, P.C.

25