# Document:Perrin v. Papa John's Int'l, Inc., 2013 U.S. Dist. LEXIS 181749

##  Perrin v. Papa John's Int'l, Inc., 2013 U.S. Dist. LEXIS 181749

**Copy Citation**

United States District Court for the Eastern District of Missouri, Eastern Division

December 31, 2013, Decided; December 31, 2013, Filed

Case No. 4:09CV01335 AGF

**Reporter**

2013 U.S. Dist. LEXIS 181749 * | 2013 WL 6885334

WILLIAM TIMOTHY PERRIN, individually and on behalf of other similarly situated persons, et al., Plaintiff, vs. PAPA JOHN'S INTERNATIONAL, INC., and PAPA JOHN'S USA, INC., Defendants.

**Subsequent History:** Stay granted by Perrin v. Papa John's Int'l, Inc., 2014 U.S. Dist. LEXIS 10076 (E.D. Mo., Jan. 28, 2014)

**Prior History:** Perrin v. Papa John's Int'l, Inc., 2011 U.S. Dist. LEXIS 117048 (E.D. Mo., Oct. 11, 2011)

## Core Terms

reimbursement, expenses, class certification, approximate, drivers, Plaintiffs', individualized, vehicles, class action, commonality, actual expenses, delivery driver, minimum wage, predominance, methodology, regulations, purposes, class member, requirements, questions, delivery, factors, expert

testimony, vehicle expense, delivery-related, reliability, composite, estimated, damages, hourly

**Counsel:** [*1] For William Timothy Perrin, individually and on behalf of other similarly situated persons, Plaintiff: Barrett J. Vahle ▾, Bradley T. Wilders ▾, George A. Hanson ▾, Lee R. Anderson ▾, LEAD ATTORNEYS, STUEVE AND SIEGEL, LLP ▾, Kansas City, MO; Mark A. Potashnick ▾, LEAD ATTORNEY, WEINHAUS AND POTASHNICK ▾, St. Louis, MO.

For Bryan Keith Harris, Dexter Bradley, William E. Cox, Merle Summers, James E. Welsh, Jr., Andrew Massin, Plaintiffs: Bradley T. Wilders ▾, Lee R. Anderson ▾, Richard M. Paul, III ▾, LEAD ATTORNEYS, STUEVE AND SIEGEL, LLP ▾, Kansas City, MO; Mark A. Potashnick ▾, LEAD ATTORNEY, WEINHAUS AND POTASHNICK ▾, St. Louis, MO.

For Aaron Mayhew, Dan Benton, Tyrone Bowden, Plaintiffs: Bradley T. Wilders ▾, Lee R. Anderson ▾, LEAD ATTORNEYS, STUEVE AND SIEGEL, LLP ▾, Kansas City, MO; Mark A. Potashnick ▾, LEAD ATTORNEY, WEINHAUS AND POTASHNICK ▾, St. Louis, MO.

For Tom Mitchell, Plaintiff: Bradley T. Wilders ▾, Lee R. Anderson ▾, LEAD ATTORNEYS, STUEVE AND SIEGEL, LLP ▾, Kansas City, MO; Mark A. Potashnick ▾, WEINHAUS AND POTASHNICK ▾, St. Louis, MO.

For Tim Bauer, Marniz Moose, Joel Bass, Plaintiffs: Bradley T. Wilders ▾, Lee R. Anderson ▾, LEAD ATTORNEYS, Richard M. Paul, III ▾, STUEVE AND SIEGEL, LLP ▾, Kansas City, MO; Mark A. Potashnick ▾, [*2] WEINHAUS AND POTASHNICK ▾, St. Louis, MO.

For Kevin Johnson, Plaintiff: Bradley T. Wilders ▾, Lee R. Anderson ▾, LEAD ATTORNEYS, Richard M. Paul, III ▾, STUEVE AND SIEGEL, LLP ▾, Kansas City, MO; Mark A. Potashnick ▾, LEAD ATTORNEY, WEINHAUS AND POTASHNICK ▾, St. Louis, MO.

For Virginia Gardner, Branden Twist, Tamika Shears, Kenneth Manzo, Benjamin Kopriva, Morgan Jones, Andre Boury, James Van Deven, Sylvester Powell, Casey Breiten, Daniel Sitter, Amariah Anderson, Robert Duncan, Brian Phillips, Donna Greene, Stacey Grissom, Christopher Tindale, Scott Dzik, James Johnson, Aleczander Vanselow, David Travis, Brad Parks, Plaintiffs: Bradley T. Wilders ▾, Lee R. Anderson ▾, LEAD ATTORNEYS, Richard M. Paul, III ▾, STUEVE AND SIEGEL, LLP ▾, Kansas City, MO.

For Papa John's International, Inc., Defendant: Patrick F. Hulla, LEAD ATTORNEY, OGLETREE AND DEAKINS, Kansas City, MO; Rodney A. Harrison, LEAD ATTORNEY, David L. Schenberg, Eric A. Todd, OGLETREE AND DEAKINS, St. Louis, MO.

For Papa John's USA, Inc., Defendant: Eric A. Todd, Rodney A. Harrison, LEAD ATTORNEYS, David L. Schenberg, OGLETREE AND DEAKINS, St. Louis, MO; Patrick F. Hulla, LEAD ATTORNEY, OGLETREE AND DEAKINS, Kansas City, MO.

**Judges:** AUDREY G. FLÉISSIG, UNITED [*3] STATES DISTRICT JUDGE.

**Opinion by:** AUDREY G. FLEISSIG

Opinion

## MEMORANDUM AND ORDER

Plaintiff William Timothy Perrin filed this action on August 19, 2009, on behalf of himself and other similarly situated delivery drivers employed by Defendants Papa John's International, Inc., and Papa John's USA, Inc., (jointly "Papa John's"). [1] Perrin claimed that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, and the minimum wage laws of five states (Missouri, Arizona, Florida, Illinois, and Maryland) that mandate a higher minimum wage than that under federal law, by failing to reasonably approximate the delivery drivers' automotive expenses for reimbursement purposes, and consequently, effectively failing to pay the minimum wage.

Perrin moved for conditional collective action certification under the FLSA and the Court granted Plaintiff's motion, requiring that notice be disseminated to [*4] 29,000 putative plaintiffs, all of Papa John's delivery drivers employed throughout the United States during the three years preceding the file of the lawsuit. Of these putative plaintiffs, approximately 4,000 filed consents to join this collective action. The parties have conducted, but not completed, discovery, and Plaintiffs from the five states noted above now move (Doc. No. 243) to certify their claims as class actions pursuant to Federal Rule of Civil Procedure 23, under the minimum wage laws of their respective states. Unlike the FLSA collective action, these Rule 23 class actions, if certified, will require individuals to opt out of the suit or be bound by the judgment in the case. See Fed. R. Civ. P. 23(c)(3); *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 177, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) (Scalia, J., dissenting).

Defendants oppose the motion for class certification and also move (Doc. No. 263) to strike the (preliminary) report and testimony of Plaintiffs' expert, Paul Lauria. For the reasons set forth below, Defendants' motion to strike will be denied and Rule 23 classes will be certified.

## BACKGROUND

All delivery drivers employed by Defendants are hourly, non-exempt employees, and perform substantially [*5] the same functions of delivering pizzas and other food items. Defendants require drivers, as a condition of their employment, to maintain safe, legally operable, and insured vehicles for the purpose of making deliveries. During the relevant time period, Defendants compensated delivery drivers using three types of payments: hourly wages, delivery-related vehicle expense payments, and, in some locations, "box bonuses." A typical box bonus was $0.25 per box for every box over five boxes delivered to a single location. The amount of each of the compensation payments varied by driver from pay period to pay period, depending upon, for example, how many hours he or she worked. Plaintiffs contend that at least at some point during, if not throughout, the Class Period all delivery drivers were paid an hourly wage at or very near the applicable federal or state minimum wage. 2⬇

The delivery-related vehicle expense payments that drivers received in addition to hourly wages were meant as compensation for costs associated with the use of their personal vehicles to make deliveries. With the assistance [*6] of an industry consultant, Defendants developed a delivery-related vehicle reimbursement formula to calculate the fixed and variable costs of operating the average Papa John's delivery driver vehicle. The formula was not based upon actual expenses, but upon estimated costs for factors such as fuel consumption and cost, maintenance and repair, insurance, depreciation, the age and type of vehicle, the number of miles driven, and the driver's age. Defendants used a uniform methodology based upon these estimated factors to derive the reimbursement rate for all drivers, but that rate changed from month to month and market to market due to variations in certain factors, such as fuel cost. Drivers were not required to track or submit actual vehicle expenses in order to receive the reimbursement payments.

Under Defendants' vehicle expense reimbursement policy, all drivers were paid a flat rate "per delivery," regardless of the number of miles driven or actual expenses incurred. The evidence indicates that drivers made approximately two deliveries per hour and the estimated distance driven for a single delivery was approximately 4.3 miles. Plaintiffs assert that they received vehicle expense [*7] reimbursement of approximately $0.23 per mile. Plaintiffs propose to show on the basis of Lauria's analysis that Defendants' reimbursement rate did not reasonably approximate vehicle expenses. His preliminary analysis shows that in 2008 a reasonable approximation would have been, per mile, $0.47 in Arizona, $0.45 in Florida, $0.44 in Illinois, and $0.41 in Missouri, and one to two cents lower in 2010. Lauria explains that this analysis does not take into account all of a driver's expenses, such as taxes or licensing costs. He states that his ultimate report would include a similar analysis of the other relevant years, and updated data obtained during ongoing discovery. (Doc. No. 243-32, Lauria Decl.)

Lauria's opinion regarding the reasonableness of the per-delivery reimbursement rate is based upon essentially the same factors Defendants used to derive their rate, but Lauria questions matters such as Defendants' choice of a base vehicle and gas efficiency assumption. Thus, Lauria's conclusions are not based upon actual vehicle expenses incurred by any particular plaintiff. Rather, based on class and industry data, he identifies specific flaws in Defendants' reimbursement formula that [*8] caused Plaintiffs to be under reimbursed for the expenses they incurred.

## DISCUSSION

### Defendants' Motion to Strike Plaintiffs' Expert's Report and Testimony

Defendants move to strike Lauria's (preliminary) report and testimony as unreliable and irrelevant. The standards set forth in Federal Rule of Evidence 702 3⬇ apply to the use of expert testimony at the class certification stage. *In re Zurn Pex Plumbing Prods. Liab. Lit.,* 644 F.3d 604, 612 (8th Cir. 2011). The Eighth Circuit has directed district courts to refrain from conducting a full and conclusive inquiry pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), at the class certification stage. 644 F.3d at 613-14. At this stage of litigation, courts are charged to engage in a more focused *Daubert* analysis which assesses the reliability of the

expert testimony "in light of the criteria for class certification and the current state of the evidence." *Id.* at 613-14 (noting that the main purpose of *Daubert* exclusion, to protect juries from being swayed by dubious scientific testimony, is not implicated at the class certification stage where the judge is the decision maker). In light of the evolving nature of the [*9] case at the class certification stage, disputes involving expert witnesses and "the factual setting of the case" are addressed, but only to the extent "necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class." *Id.* at 611 (citation omitted). The Eighth Circuit has recognized that because class certification decisions are generally made before the close of merits discovery, the analysis is necessarily prospective and subject to change and will involve some evidentiary uncertainty. *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005).

In addition, the closer any factual or evidentiary dispute comes to the heart of the claim, the more cautious the court should be in deciding whether to exclude expert testimony related to that issue. *Blades*, 400 F.3d at 567. Expert testimony should be excluded from consideration at the class certification stage only if it "is so fundamentally unsupported that it can offer no assistance to the jury," because the "usual concerns of the [*Daubert*] rule - keeping unreliable expert testimony from the jury - are not present in such a setting." *In re Zurn*, 644 F. 3d at 613-14 (quotation omitted).

Rule 702 sets forth standards designed to ensure that "all scientific testimony is both reliable and relevant." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Marmo*, 457 F.3d at 757. In assessing reliability, the court may consider whether the [*11] opinion can be and has been tested, whether the theory has been subjected to peer review, any known or potential rate of error, the opinion's general acceptance, whether the opinion was developed for litigation or naturally flowed from the expert's work, and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case. *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009).

To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. *Marmo*, 457 F.3d at 758. Thus, the proffered expert's methodology must be not only scientifically valid but also applicable to the case. *Bland v. Verizon Wireless (VAW) LLC*, 538 F.3d 893, 896 (8th Cir. 2008).

Defendants first assert that Lauria's opinions are unreliable because his experience and expertise is primarily in the area of expense reimbursement for "fleet vehicles" owned by the employer and used by the employee in the course of his employment. They contend that he lacks sufficient experience in approximating vehicle expenses for employee-owned vehicles and that this fact renders him unqualified to render [*12] an opinion about the reimbursement of drivers who use their personal vehicles in the course of their employment.

The record indicates that Lauria is highly credentialed and has 26 years of experience advising sizable private businesses and governmental entities with respect to the cost of owning and operating vehicles for business use. (Doc. No. 243-32 at 22-42.) Much of Lauria's experience has involved cost analysis for fleet vehicles but the record also indicates that in the past Defendants' consultant has retained Lauria to assist it in its cost analysis for employee-owned vehicles.

Defendants offer no evidence or persuasive argument that Lauria's experience renders him unqualified to offer an opinion here. They do not explain how or why vehicle expense estimation and reimbursement for fleet vehicles differs so greatly from employee owned vehicles as to make his experience inapplicable here. Defendants define the relevant field of expertise narrowly so as to disqualify Lauria, but provide no support for their assertion that such a narrow definition is warranted. In the absence of persuasive evidence to the contrary and for purposes of the issues presented, the Court is satisfied that [*13] his experience in the field of estimating fixed and variable vehicle costs and expenses for reimbursement purposes, whether for fleet vehicles or for employee-owned vehicles, qualifies Lauria to render the expert opinion proffered in support of this motion for class certification.

Defendants also move to strike Lauria's testimony as irrelevant and inapplicable to the issues in the case because his opinion is predicated upon average or composite cost factors and not upon actual

vehicle expenses. Defendants assert that the use of average and composite data as "common" evidence of class-wide liability deprives them of their right to defend against the claims of individual plaintiffs. In addition, they contend that Plaintiffs may not rely upon composite evidence to mask the questions of individualized proof inherent in their claims.

In light of the fact that Defendants' own delivery-related vehicle expense reimbursement payments are based upon fixed and variable cost factors and are not derived from the actual vehicle expenses of its employees, the Court cannot agree that Plaintiffs' use of such evidence is irrelevant or inapplicable here. Defendants' reimbursement methodology is intended **[\*14]** to approximate actual vehicle expenses, but it is not derived from such expenses. In order to challenge this approximation, as Plaintiffs must do in order to prove their prima facie case, Plaintiffs propose to examine the assumptions upon which it is based.

The applicable law and regulations that, as more fully explained below, form the basis of Plaintiffs' claims address the effect of reimbursement premised upon use of reasonably approximate, not actual, expenses. In order to establish liability, Plaintiffs will need to show that the delivery-related vehicle reimbursements do not reasonably approximate actual expenses to the extent that Plaintiffs' wages were effectively below minimum wage. In light of industry norms and the accepted use of, and indeed preference for, approximations in the regulatory scheme, the use of average and composite figures is relevant and applicable here. In addition, the Court fails to see how the use of average and composite figures deprives Defendants of the ability to defend against the claims of individual Plaintiffs because the approximations derive from Defendants' own methodology. For these reasons, Defendants' assertion that Lauria's opinions should **[\*15]** be stricken because they are not based on actual expenses fails.

Finally, Defendants contend that Lauria's opinions should be stricken as unreliable because Defendants disagree with his assumptions and certain elements of his methodology. Defendants' do not, however, assert that Lauria's opinion and methods are contrary to accepted practice in the industry or lacking in any rational foundation. As the litigation progresses, Defendants will be able to challenge the reasonableness of Lauria's assumptions. Their present objections to Lauria's opinion do not constitute a basis to strike his testimony. At this juncture, the Court cannot say, and Defendants have not shown, that Lauria's proffered testimony and opinions are so fundamentally lacking in support as to be of no assistance to the jury. Accordingly, Defendants' motion to strike Lauria's report and testimony for purposes of determining class certification will be denied.

## Motion for Class Certification under Rule 23

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively **[\*16]** demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (citations omitted). Rule 23(a) sets out four threshold requirements for class certification – (1) sufficiently numerous parties, (2) common questions of law or fact, (3) typicality of claims or defenses, and (4) adequacy of representation. A class action plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp.,* 133 S.Ct. at 1432. The provision at issue here is Rule 23(b)(3), which requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In order to obtain class certification, Plaintiffs have "the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *See Luiken v. Domino's Pizza, LLC,* 705 F.3d 370, 372 (8th Cir. 2013) (citation omitted).

Defendants first argue that Plaintiffs cannot meet the "commonality" requirement of Rule 23(a) because whether the application of Defendants' **[\*17]** reimbursement policy resulted in sub-minimum wage for a particular driver is dependent on individualized, not common, evidence regarding that driver's income and expenses. Defendants maintain that Plaintiffs' asserted "common evidence," namely, evidence that Defendants' auto expenses reimbursement model is flawed, is itself

flawed in that it is based on a "hypothetical, composite" driver.

Though perhaps troubling in some contexts, the Court finds this argument unpersuasive in the specific context of this case. The question is whether Plaintiffs' claims "depend upon a common contention . . . [that is] of such a nature that . . . determination of its truth or falsity will resolve an issue that is central to the validity of each one of the [individual plaintiff's] claims in one stroke." *See Luiken,* 705 F.3d at 377 (quoting *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)). Here the Court believes that the commonality requirement is met, despite the fact that there will be a need for individualized calculation of damages. The issues facing the class arise from common questions involving Defendants' policies regarding the calculation and payment of reimbursement for delivery expenses. **[\*18]** This is sufficient to satisfy the commonality requirement. *See Covillo v. Specialty's Café,* No C-11-00594 DMR, 2013 U.S. Dist. LEXIS 153724, 2013 WL 5781574, at \*6 (N.D. Cal. Oct. 25, 2013); *Lewis v. Alert Ambulette Serv. Corp.,* No. 11-CV-442, 2012 U.S. Dist. LEXIS 6269, 2012 WL 170049, at \*10 (E.D.N.Y. Jan. 19, 2012) ("In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice" that was unlawful.); *Garcia v. Pancho Villa's of Huntington Village, Inc.,* 281 F.R.D. 100, 106 (E.D.N.Y. 2011) (explaining that the need for an individualized determination of damages generally does not defeat the commonality requirement).

Defendants argue that Plaintiffs cannot satisfy the typicality requirement under Rule 23(a) for the same reasons that they cannot demonstrate commonality. According to Defendants, no putative class member is typical of any other proposed class member because each putative class member's claim requires a case-by-case determination based on proof unique to each driver. The Court rejects this argument for essentially the same reasons it rejected Defendants' commonality arguments.

The Court also finds unpersuasive Defendants' arguments that Plaintiffs have **[\*19]** not shown that the five putative classes are so numerous that joinder of all members is impracticable, Fed. R. Civ. P. 23(a)(1), or that Plaintiffs' have not shown their adequacy as class representatives, *id.* 23(a)(4). More specifically on the question of adequacy, Defendants' argument that the proposed class representatives are not adequate because they rely too much on counsel's advice is without merit. *See, e.g., Rentschler v. Carnahan,* 160 F.R.D. 114, 116-17 (E.D. Mo. 1995) (explaining that the adequacy requirement has two components: (1) the class representatives' interests must be coextensive with and not antagonistic to those of the unnamed class members; and (2) the plaintiffs' counsel must be fully competent to prosecute the action as a class action).

As noted above, besides meeting the four threshold requirements of Rule 23(a), Plaintiffs must also satisfy through evidentiary proof the predominance requirement of Rule 23(b)(3). To show Rule 23(b)(3) predominance, Plaintiffs must show that "damages are capable of measurement on a classwide basis" and that "[q]uestions of individual damage calculations will [not] inevitably overwhelm questions common to the class." *See Comcast Corp.,* 133 S.Ct. at 1433. **[\*20]** The test for predominance under Rule 23(b)(3) is "far more demanding than the requirement of commonality" under Rule 23(a). *Luiken,* 705 F.3d at 377 (citation and internal quotation marks omitted).

Common issues must predominate, but they need not be exclusive, and the presence of some individualized questions regarding damages unrelated to proof of liability will not preclude certification. *Wal-Mart,* 131 S. Ct. at 2558 (deeming it "clear that individualized monetary claims belong in Rule 23(b)(3)"; *Glen v. Fairway Indep. Mortg. Corp.,* 265 F.R.D. 474, 481-82 & n.5 (E.D. Mo. 2010) (certifying a class where individualized damages questions would not require evidentiary hearings for each class member and calculations could be made "using computer records and clerical assistance").

Defendants assert that the predominance requirement of Rule 23(b)(3) cannot be met here because to prove their prima facie case, Plaintiffs will need to show that their individual vehicle expenses exceeded the delivery-related vehicle reimbursements. Plaintiffs respond that individual proof of actual expenses is not required to establish liability. They contend instead, that common evidence predominates over individualized **[\*21]** proof in establishing the central question with respect to liability, whether Defendants' vehicle reimbursement policy reasonably approximates the vehicle expenses of delivery drivers in each state class, does not require individualized proof.

Pursuant to Department of Labor ("DOL") regulations 4 applicable to the FLSA and the five states' minimum wage laws, 5 "the wage requirements of [the FLSA] will not be met where the employee

'kicks-back' directly or indirectly to the employer . . . the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35. A kickback occurs when the cost to the employee of tools specifically required for the performance of the employee's work "cuts into the minimum or overtime wages required to be paid him under [the FLSA]." *Id.* Pursuant to 29 C.F.R. § 778.217(a), "if the amount of the reimbursement reasonably approximates the expenses incurred" payments made by an employer to cover expenses, such as the vehicle expenses at issue here, are not considered in determining the employee's effective hourly rate for purposes of the FLSA and the state wage laws. The regulations further provide that the "actual or reasonably approximate amount of the **[*22]** expense is excludable" for purposes of determining the effective hourly rate. *Id.* § 778.217(c).

Under the regulations "an employer [may] approximate reasonably the amount of an employee's vehicle expenses without affecting the amount of the employee's wages for purposes of the federal minimum wage law." *Wass v. NPC Int'l, Inc.,* 688 F. Supp. 2d 1282, 1285-86 (D. Kan. 2010). However, if the employer's approximation is unreasonable, the employee may have a claim that his wage rate was reduced **[*23]** below minimum wage as a result of the insufficient reimbursement. *Id.* at 1287; *Smith v. Pizza Hut, Inc.,* No. 9-CV-01632-CMA-BNB, 2011 U.S. Dist. LEXIS 76793, 2011 WL 2791331, at *4 (D. Colo. July 14, 2011); *Darrow v. WKRP Mgmt. LLC,* No. 09-CV-01613, 2011 U.S. Dist. LEXIS 59388, 2011 WL 2174496, at *3-4 (D. Colo. June 3, 2011). In proving such a claim, a plaintiff may rely on a reasonable estimate of his vehicle-related expenses and need not show his actual expenses. *Darrow,* 2011 U.S. Dist. LEXIS 59388, 2011 WL 2174496, at *4 (citing cases); *Smith,* 2011 U.S. Dist. LEXIS 76793, 2011 WL 2791331, at *4 n.4.

"The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Halvorson v. Auto-Owners Ins. Co.,* 718 F.3d 773, 778 (8th Cir. 2013) (citing *Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1029 (8th Cir. 2010)). Here, in order to demonstrate Defendants' liability under the states' wage laws, Plaintiffs will first be required to show that Defendants' vehicle reimbursement policy does not reasonably approximate Plaintiffs' vehicle expenses. As noted in the discussion on Rule 23(a) commonality, Plaintiffs propose to make such a showing on the basis of common evidence, namely, Lauria's **[*24]** analysis of class wide and industry data challenging the assumptions Defendants used to determine their reimbursement amounts.

Defendants' assertion that individualized showings of each Plaintiff's vehicle expenses will be required to prove Plaintiffs' claims is without merit. Defendants' own reimbursement methodology does not depend upon the drivers' actual expenses and the regulatory framework does not require that reimbursement be based on actual expenses. Nowhere do Defendants argue that if Plaintiffs prevail on their theory of liability, Defendants will not be able to determine each class member's damages by using computer data readily available to Defendants.

The Court is mindful that it may not certify a class that contains members who lack standing because they had no injury in fact. *See Halvorson,* 718 F.3d at 778-79. The Court believes, however, that Plaintiffs have met their burden of showing that all of Defendants' delivery drivers in the five states at issue have, at some point during the relevant time period, been paid at or very near the applicable minimum wage, and thus will have sustained some injury if Plaintiffs prevail on their theory of liability. *See* 29 C.F.R. § 531.35 **[*25]** (stating that there would be a violation of the FLSA in any work week when under-reimbursement of work-related costs an employee was required to expend cuts into the mandated minimum wage). If later in the litigation it becomes apparent that any of the state classes include individuals who do not have standing, the Court "may decertify the class or amend the class definition." *See In re Zurn,* 644 F.3d at 617 (citing Fed R. Civ. P. 23(c)(1)(C); *Daffin v. Ford Motor Co.,* 458 F.3d 549, 553-54 (6th Cir. 2006)).

Lastly, the Court finds that adjudication of the state claims as class actions is superior to resolving them individually. Although administration of the case may indeed prove challenging, the Court is satisfied that the case will be manageable. The classes are discrete, can be identified from Defendants' records, and adjudicating identical claims and legal theories will avoid numerous individual trials of the same nature. *See Aguilar v. Husco Int'l., Inc.,* No. 08-C-0154, 2009 U.S. Dist. LEXIS 94333, 2009 WL 3102791, at *2 (E.D. Wis. Sept. 24, 2009). Furthermore, a class action fosters judicial economy and helps to ensure that class members who are otherwise unaware that they possess a claim, or are unable to **[*26]** hire a lawyer, will have their rights represented.

**CONCLUSION**

On the basis of the foregoing the Court concludes that Plaintiffs' request for class certification should be granted. Taking into account the factors set forth in Rule 23(g), the Court also concludes that the proposed class counsel are qualified to pursue these claims and their participation will be approved. The Court also has reviewed the proposed forms of Class Notice (Doc. No. 243-35) and concludes that they duly inform putative class members of the existence of the class action and their right to participate in or opt out of the class action.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to strike the report and testimony of Plaintiffs' expert witness is **DENIED.** (Doc. No. 263.)

**IT IS FURTHER ORDERED** that Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3) is **GRANTED.** (Doc. No. 243.)

**IT IS FURTHER ORDERED** that Plaintiffs James Hammond (Missouri), Aaron Mayhew (Illinois), Daniel Pecci (Florida), Joshua Nowak (Arizona), and Woodrow Taylor (Maryland) are designated as representatives of each of their respective state classes.

**IT IS FURTHER ORDERED** that the law firms of Stueve [*27] Siegel Hanson LLP and Weinhaus & Potashnick are designated as Class Counsel.

**IT IS FURTHER ORDERED** that the Court approves for dissemination, in the manner proposed by Plaintiffs, the form of Class Notice attached as Exhibit 12 to the motion for class certification. (Doc. No. 243-35).

/s/ Audrey G. Fleissig

AUDREY G. FLEISSIG

UNITED STATES DISTRICT JUDGE

Dated this 31st day of December, 2013.

**Footnotes**

[1] Defendant Papa John's International, Inc., is the parent company of Defendant Papa John's USA, Inc. Both entities own stores in their own names for tax reasons. (Doc. No. 243-1, 7:20-25, 14:15-25). Together, Defendants operate approximately 583 Papa John's restaurants in roughly 18 markets. *Id.* at 28:18-29:3.

[2] During the relevant time period, the federal minimum wage rose from $5.15 per hour to $7.25 per hour.

[3] Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of [*10] the case.

[4] DOL regulations are entitled to judicial deference. *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 876 (8th Cir. 2011) (recognizing deference to DOL regulations for purposes of interpreting the FLSA).

[5] In all five states, DOL interpretations of the FLSA are applied to the state's wage law. *See, e.g.,* Fla. Const. Art. X, § 24(f) (providing that "[i]t is intended that case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations."); Ill. Admin. Code tit. 56, § 210.120 (providing that Illinois' minimum wage law may be interpreted by reference to the federal regulations).

**Content Type:** Cases

**Terms:** 181749

**Narrow By:** -None-

**Date and Time:** Jun 12, 2017   01:23:57 p.m. EDT

 About LexisNexis®   Privacy Policy   Terms & Conditions   Sign Out

Copyright © 2017 LexisNexis. All rights reserved.

RELX Group™