Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
 2           FOR THE EASTERN DISTRICT OF MICHIGAN
 3                      SOUTHERN DIVISION
 4
 5   CHAD MCFARLIN, individually
     and on behalf of all
 6   similarly situated persons,
 7
 8           Plaintiffs,
 9
10   vs.                      Civil Action No:
                              2:16-cv-12536
11
                              HON. GERSHWIN A. DRAIN
12   THE WORD ENTERPRISES, LLC,
     et al,
13
14
             Defendants.
15
16   _____/
17
18
19       The Deposition of KEVIN DITTRICH was taken
20   before me, Barbara Phillips, (CER #5598) and Notary
21   Public, in and for the County of Washtenaw, State of
22   Michigan, at 221 N. Main Street, Suite 300, Ann
23   Arbor, Michigan, on Tuesday, December 5, 2017, at
24   1:00 p.m.
25
```

Page 2

```
 1   APPEARANCES:
 2
 3              DAVID M. BLANCHARD (P67190)
 4              221 N. Main Street, Suite 300
 5              Ann Arbor, Michigan  48104
 6              734-929-4313
 7
 8              Appearing on behalf of the Plaintiffs.
 9
10
11              JEFFREY S. THEUER (P44161)
12              124 West Allegan Street, Suite 700
13              Lansing, Michigan  48933
14              517-482-2400
15
16              Appearing on behalf of the Defendants.
17
18                    ** ** ** ** **
19
20   REPORTED BY:  Barbara Phillips,
21                 (CER #5598)
22                 and Notary Public.
23
24
25   ALSO PRESENT:  Michele Follman
```

Page 3

```
 1                      I N D E X
 2   WITNESS:                                      PAGE:
 3                  K E V I N   D I T T R I C H
 4
 5          Examination by Mr. Blanchard             6
 6
 7
 8                    ** ** ** ** **
 9
10                 E X H I B I T S
11   EXHIBITS:                                      PAGE:
12
13          Deposition Exhibit No. 16                4
14          Deposition Exhibit No. 17                6
15          Deposition Exhibit No. 18                9
16          Deposition Exhibit No. 19               14
17          Deposition Exhibit No. 20               18
18          Deposition Exhibit No. 21               19
19          Deposition Exhibit No. 22               24
20          Deposition Exhibit No. 23               25
21          Deposition Exhibit No. 24               26
22
23
24                    ** ** ** ** **
25
```

Page 4

```
 1        (Deposition Exhibit No. 16
 2         was marked for identification.)
 3
 4           Ann Arbor, Michigan
 5           Tuesday, December 5, 2017
 6           12:55 p.m.
 7
 8        ** ** ** ** **
 9
10       K E V I N   D I T T R I C H
11   after having been first duly sworn to tell the
12   truth, the whole truth, and nothing but the
13   truth, was examined and testified upon his
14   oath as follows:
15       MR. BLANCHARD:  Hello, Mr. Dittrich.
16       THE WITNESS:  Hello.
17       MR. BLANCHARD:  Am I pronouncing your
18   name correctly?
19       THE WITNESS:  Yes.
20       MR. BLANCHARD:  Great.  It's the first
21   time we've met here today, isn't it?
22       THE WITNESS:  Yes.
23       MR. BLANCHARD:  But this is actually the
24   adjournment of the previously scheduled
25   deposition that we're continuing.  You
```



Page 9
1   specifically.
2   Q.  So when you're taking that subminimum wage from
3       approximately November of 2014 through the present
4       date for the defendant companies, as part of that
5       the defendant companies posted this exhibit we
6       looked at before; is that right?
7           MR. BLANCHARD:  I'll show it to you again, what
8       we're marking as Exhibit 18.
9           MR. THEUER:  This is 18?
10          MR. BLANCHARD:  18.
11          MR. THEUER:  What was the affidavit?
12          MR. BLANCHARD:  17.  And the dep notice was 16.
13          MR. THEUER:  Thank you.
14          MR. BLANCHARD:  I should have gone through
15      that.
16              (Deposition Exhibit No. 18
17              was marked for identification.)
18  BY MR. BLANCHARD:
19  Q.  Are you ready?
20  A.  Yeah.
21  Q.  So we looked at it before.  Again, I'm not trying to
22      repeat myself, but I just wanted to verify.  I don't
23      know if you know off the top of your head when this
24      particular notice was used?
25  A.  I do not.

Page 10
1   Q.  It would be, of course, when the minimum wage went
2       to 8.15, right?
3   A.  Correct.
4   Q.  And then the minimum wage was changed -- was it once
5       or twice since then?
6   A.  Two, maybe three times since then.
7   Q.  And it's going up in January, right?
8   A.  Right.
9   Q.  Each time that it's changed do you know if a new one
10      of these notice postings has been created or
11      generated?
12  A.  I do not know that.
13  Q.  Because I've only seen this one with 8.15.  I
14      haven't seen other numbers, so I was just curious if
15      there were other ones.  I will again follow-up with
16      Ms. Follman on that.  So this notice is notifying
17      employees that you're taking the tip credit and as
18      part of that tip credit if their compensation falls
19      below -- and this is at the time when it was 8.15.
20      If their compensation falls below the 8.15 minimum
21      wage that the company would be responsible for
22      making up the difference so they'd get to the
23      minimum wage; is that right?
24  A.  Correct.
25  Q.  The company wasn't responsible or pledging to pay

Page 11
1       the employee anything more than getting them up to
2       the base minimum wage; is that right?
3   A.  To my understanding, yeah.
4           MR. THEUER:  I'll object to the form of the
5       question just because the base minimum wage is not
6       the same as what you were using in the prior
7       question.  Is there a difference between the base
8       minimum and minimum wage under the statute?
9           MR. BLANCHARD:  No.  I was possibly being
10      inarticulate.
11  BY MR. BLANCHARD:
12  Q.  So let me just replace that with 8.15.  At the time
13      the minimum wage was 8.15 the company was not
14      pledging to pay anything more or promising to pay
15      anything more than the amount of money it would take
16      to get the driver to 8.15?
17  A.  To my understanding.
18  Q.  That's a yes?
19  A.  Yes.
20  Q.  And then is it true at times after that when the
21      minimum wage changed to -- was it 8.45 at the time
22      or something like that?  It changed to different
23      amounts.  The new obligation of the company was to
24      make sure that the subminimum wage plus any tips
25      that were received by the driver at least exceeded

Page 12
1       that minimum wage amount?
2   A.  Correct.
3   Q.  And at the time it was various amounts or whatever
4       it was at the time?
5           MR. THEUER:  I'll object to the form of the
6       question just because you were referring to the term
7       subminimum wage.  If what you mean is the cash wage,
8       the cash wage that is allowed under the Federal
9       Labor Standards Act for tipped employees then maybe
10      we should clarify that.  Is that what you mean by
11      the subminimum wage?
12          MR. BLANCHARD:  Yes, that is correct.
13  BY MR. BLANCHARD:
14  Q.  So were you a part of the decision that was made to
15      go from a full minimum wage to the tip credit
16      minimum wage in November of 2014?
17  A.  Yes.
18  Q.  Who else was involved in that decision for your
19      defendant stores to do that?
20  A.  It would have been myself, Michele, and then another
21      gentleman, Brad Follman.
22  Q.  And what did you review or consult to decide to do
23      that?
24  A.  The industry average.  We do what we call a
25      competitive analysis so we called on Domino's Pizza,



```
                                              Page 29
 1    STATE OF MICHIGAN      )
                             ) ss.
 2    COUNTY OF OAKLAND      )
 3              CERTIFICATE OF NOTARY PUBLIC
                     AND COURT REPORTER
 4
 5           I, BARBARA PHILLIPS, Notary Public in
 6      and for the County of Oakland, State of
 7      Michigan, do hereby certify that the witness
 8      whose attached deposition was taken before me
 9      was first duly sworn to testify to the truth,
10      the whole truth and nothing but the truth;
11      that thereupon the foregoing questions were
12      asked and the foregoing answers were made by
13      the witness, which were duly recorded by me
14      electronically; and were reduced to
15      typewritten form by computer-aided
16      transcription under my direction; and that
17      this is, to the best of my knowledge and
18      belief, a true and correct transcript of my
19      electronic records so taken.
20           I further certify that I am neither of
21      counsel to either party, nor interested in the
22      events of this cause.
23      [signature]
24      Barbara Phillips, #5598
        Notary Public, Oakland County, MI
25      My Commission Expires:  11-27-2018
```



*800.211.DEPO (3376)*  
*EsquireSolutions.com*