# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| Chad McFarlin, | ) | |
| | ) | Civil Action No.: 2:16-cv-12536 |
| **Plaintiff,** | ) | |
| | ) | Hon. Gershwin A. Drain |
| **v.** | ) | |
| | ) | |
| THE WORD ENTERPRISES, LLC, | ) | |
| et al., | ) | |
| **Respondent.** | ) | |

---

## EXPERT REPORT OF PAUL T. LAURIA

I have been retained by the Plaintiff in the above-styled arbitration to provide expert opinions on issues relevant to the case. This report constitutes an initial statement of opinions I have formed and intend to express at the final hearing of this matter, along with an explanation of the basis and reasons for them as required by Fed. R. Civ. P. 26(a)(2) based on the information received to date. If, after submitting this report, I receive additional relevant information, I reserve the right to supplement this report as necessary.

Dated: June 13, 2017

*Paul T. Lauria*
*President*
*Mercury Associates, Inc.*
*7361 Calhoun Place, Suite 680*
*Rockville, MD 20855*
*301 519 0535 (office)*

## QUALIFICATIONS

I am the President and principal shareholder of Mercury Associates, Inc., one of North America's premier providers of vehicle fleet management consulting services. I co-founded Mercury Associates in 2002.

I hold a Master's Degree in Transportation Planning from the University of North Carolina, Chapel Hill. I have more than 32 years of experience consulting with hundreds of organizations on the determination and management of the costs of both employee and employer-owned vehicles that are used for business purposes. Before co-founding Mercury Associates, I was a Vice President of Maximus, Inc., where I served as national director of fleet management consulting services. Prior to that, I was a Senior Manager in the Transportation Consulting Group of Ernst & Young.

Attached at Tab 1 is a true and correct copy of my résumé.

Attached at Tab 2 is a listing of all other cases for which I have served as an expert in the previous ten years.

## SUMMARY OF OPINIONS

I was asked to 1) describe the underlying principles for using, and a methodology for developing, a personally owned vehicle (POV) mileage reimbursement program that would reasonably reimburse drivers for the costs they incur in owning and operating their personal vehicles to make deliveries on behalf of The Word Enterprises, LLC and its related companies (The Word); and 2) develop a reasonable conservative estimate, based on my experience serving as an expert witness on other similar cases involving delivery drivers, of a reimbursement amount that might be sufficient to reimburse Plaintiff Chad McFarlin for these costs.

Based on my education, training, professional experience, and review of materials in this case and general industry information, and relying on vehicle cost determination methods that are sound and widely accepted in my industry, I have formed the following opinions in this case:

1) When an employer chooses to reimburse a large number of employees for the cost of owning and operating their personal vehicles for business use, it is standard practice in my industry to reimburse employees using an aggregate reimbursement rate, like the IRS standard mileage rate.

2) Based on my experience serving as an expert witness on several cases similar to this one, I developed an estimate of a reasonable reimbursement rate for Mr. McFarlin. My data sources and cost

3

calculations are shown in a Microsoft *Excel*® workbook appended to this report.[1] I found this rate to result in per-month business vehicle use costs, and hence reasonable reimbursement amounts, that are considerably higher than the amount that The Word has effectively reimbursed Mr. McFarlin since he joined the company nearly two years ago. Indeed, the company's reimbursement for the costs of the business use of his vehicle is so inadequate that he is effectively losing about $700/month working for The Word.

3) The costing methods applied in my calculation of Mr. McFarlin's reasonable cost of driving can be performed on a company-wide basis to determine a reasonable company-wide reimbursement rate. In fact, in my profession, it is common to perform such calculations to determine a reasonable company-wide vehicle cost reimbursement rate.

---

[1] My cost calculations and all the underlying data, assumptions, mathematical equations and formulas I used to develop them are contained in an *Excel* file, *Estimated Costs for McFarlin.xlsx*, as they are too voluminous to include in this document. Worksheets from this file are attached as Tab 3.

## FACTS AND DATA REVIEWED IN FORMING OPINIONS

### A. Evidence Developed In This Case

In forming my opinions expressed herein and preparing this Expert Report, I reviewed the following materials developed as evidence in this case:

- Information on the specific type of vehicle, age of vehicle, and estimated annual personal and business (i.e., delivery) miles driven in Mr. McFarlin's personal vehicles provided to me by Plaintiff's counsel.

- Information on Mr. McFarlin's deliveries for, and compensation paid by, The Word, provided to me by Plaintiff's counsel.

### B. Information Sources

In forming my opinions expressed herein and preparing this Expert Report, I also utilized information from the following sources:

- Vehicle purchase price and loan amount, interest rate, and term (duration), for the vehicle purchased by Mr. McFarlin for use in making deliveries for The Word.

- Vehicle fuel economy (MPG) rates for applicable vehicle models and model years published by the U.S. Environmental Protection Agency.

- Vehicle fuel costs per gallon for regular gasoline for the applicable time period and geographic region (Michigan) in which Mr. McFarlin lives and works, published by the U.S. Department of Energy, Energy Information Administration.

- Vehicle maintenance and repair cost estimations for the vehicle model used by Mr. McFarlin to make deliveries for The Word, published by Edmunds as part of its *True Cost to Own*© vehicle cost calculator.

- Used vehicle sales prices for the vehicle used by Mr. McFarlin, published by Edmunds.

- Insurance premium costs furnished by Mr. McFarlin.

- Vehicle title and registration information published by the Michigan Secretary of State.

### C. Other

I have also relied on my own knowledge and experience spanning more than 30 years providing and performing vehicle cost estimates for large companies and governmental agencies.

It is common in my profession to rely on these sources in calculating vehicle ownership and operating costs. I and many of my employees have used these sources of data to estimate vehicle-related costs for corporate/commercial as well as federal, state, and local government entities.

## BASIS FOR OPINIONS

**Opinion 1: When an employer chooses to reimburse employees for the costs of using their personally owned vehicles for business purposes, it is common practice to establish a reimbursement method separate and apart from the method(s) used to compensate employees for their services. Furthermore, it is common to base reimbursement amounts on a cents-per-mile amount that reflects the average estimated cost of the types of vehicles used by the general public or by a specific group of employees, such as delivery drivers.**

### A. Relevant Experience

My company and I are frequently engaged to advise businesses and governmental entities on determining and managing the costs of owning and operating motor vehicles for business purposes. I have been providing research and consulting services on such matters for more than 30 years. This includes determining and comparing the cost of organizations meeting the business vehicle needs of its employees using employer-owned versus employee-owned vehicles. For instance, as long ago as 1988, while employed by Ernst & Young, I co-directed a landmark research study on the comparative costs of employer versus employee provision of business cars.[2] I recently directed a study for the State of New York, one of whose objectives was to determine cost savings opportunities that could be achieved by furnishing State-owned cars to some of the employees who collectively receive almost $13 million per year in reimbursement for driving their personally owned vehicles on State business.

---

[2] Lauria, Paul T. and Taggart, Robert E., *Employer versus Employee Provision of Business Cars: A Cost Comparison*, Iselin, NJ: NAFA Foundation, May 1989.

7

In the course of my consulting work, I frequently have been called upon to quantify and analyze the total cost of ownership (TCO) of different types of vehicles – ranging from passenger cars to multi-million dollar pieces of mining and construction equipment – over a range of possible vehicle replacement cycles in terms of age, accumulated mileage, or both. This is the same type of vehicle cost analysis I have performed on this and other expert witness cases to determine reimbursement rates for delivery drivers that are sufficient to reasonably reimburse them for the costs they incur to own and operate their POVs for business purposes.

### B. Driver Reimbursement Principles

It is generally impractical, illogical, and unnecessary for an employer to reimburse a large number of employees for the costs of the business use of their personally owned vehicles based on the actual costs each employee incurs for such use while employed. For this reason, programs that employ reimbursement rates based on the typical costs of owning and operating a vehicle are widely used by business owners as the basis for making such reimbursements. Indeed, the best known and most widely used program of this type is the Internal Revenue Service *Standard Business Mileage Rate*.[3] Several employers of delivery drivers with whose reimbursement programs I am familiar, however, do not use the *Standard Business Mileage Rate* for reimbursing their delivery drivers. They use an alternative, but still

---

[3] See, for example, *IRS Notice 2016-01: 2016 Standard Mileage Rates* available at https://www.irs.gov/pub/irs-drop/n-16-01.pdf.

8

aggregate or class-wide reimbursement programs, under which they reimburse their *delivery* drivers based on costs they are estimated to incur instead of the actual expenditures they make to own and operate their vehicles.

The benefits of reimbursing employees for the business use of their POVs using a per-mile rate that reflects the average or typical driver's costs are obvious. In most situations, reimbursing individual employees for their actual vehicle-related *expenditures* is illogical and unnecessary because out-of-pocket *expenses* provide an incomplete picture of the true *costs* of owning and operating a vehicle for business purposes. This is because many of the largest vehicle operating expenses that a driver incurs are *intermittent*, not continuous, in nature. As a result, the vehicle-related expenditures made by a given driver during a given period of time – such as their period of employment with The Word – reflect vehicle purchase, maintenance, repair, and other events (e.g., an accident, a failed transmission, a replaced engine, etc.) and practices that occurred before or after that period.

To give one example, should the entire cost of a major repair expenditure, say, replacing a worn-out transmission, in the second month of a driver's employment with The Word be borne by the company when this expense obviously was the result of vehicle operating, usage, maintenance and repair, and/or other practices or events that occurred *prior* to the driver's employment? In my experience, the answer is of course not.

9

Conversely, if a driver replaces his/her transmission two months before s/he begins working for The Word, it is clear that the company derives benefits from the large expense the driver incurred to make such a repair. But if The Word reimbursed only the actual vehicle expenses incurred by the driver while employed, the company would bear no portion of the cost of this repair despite enjoying the corresponding benefit of it.

Perhaps the most important reason, however, that reimbursing employees for their actual vehicle expenditures during a given period of time is not an adequate means of compensating them for these costs is that one of the largest costs associated with owning and operating a vehicle is not a discrete, out-of-pocket expense for which an employee can produce a receipt. This cost, depreciation, accounts for an average of 44 percent of the total cost of ownership of a vehicle according to the IRS.[4]

Depreciation is a way of quantifying and accounting for the capital cost of a vehicle over time, even if the out-of-pocket expense associated with this cost is incurred at the beginning of the vehicle's life. Depreciation reflects the diminishing market value of a vehicle as it ages and accumulates mileage and associated wear and tear. The exact depreciation cost of a given vehicle to a given vehicle owner cannot be determined unless and until that vehicle has been sold. It is possible, however, to estimate depreciation prior to when the vehicle has been sold based on a wealth of published

---

[4] Depreciation accounts for $0.24 of the 2016 Standard Business Mileage rate of $0.54 according to *IRS Notice 2016-01: 2016 Standard Mileage Rates*, p. 2*.*

information on new and used vehicle sales prices or fair market values of the myriad of types of vehicles operated in the United States.

It also is impractical and unnecessary to have a different reimbursement rate for each employee to account for the fact that employees drive different vehicles, purchase different insurance, use different types of tires, drive different distances, or live in different locations within the same state. Behaviors that, at first glance, may appear individual among drivers are actually captured by utilizing an average reimbursement cost. This is because of the interrelatedness of the costs of operating a vehicle.

For instance, if I base a reimbursement rate, in part, on the costs of vehicle manufacturers' recommended preventive maintenance activities, my estimates of vehicle, repair, fuel, and depreciation costs obviously presume that these recommendations are being followed. But, a driver is, if anything, going to have *higher* repair and depreciation costs and lower fuel economy if s/he does not perform these services as recommended – this is precisely why they are referred to as *preventive* maintenance services. Thus, it is not necessary to know if and when drivers actually performed those services in calculating the costs of a typical vehicle, because assuming that they do so is a *best-case* assumption. Human nature being what it is, this assumption yields an eminently reasonable, if somewhat conservative, estimate of the costs associated with the business use of the vehicle.

11

For all the reasons just cited, the prevailing practice in the organizations with whom I have worked throughout my career that permit or require their employees to use their personally owned vehicles for business purposes use either the IRS Standard Business Mileage Rate or an IRS-approved FAVR program.

The costs of using personal vehicles for business can be estimated on a company-wide basis to a reasonable degree of certainty by applying information from a cross-section of such employees and the vehicles they drive and for which costs are to be estimated to information from a) vehicle manufacturers; b) federal government agencies such as the EPA, Energy Information Administration, and Bureau of Labor Statistics; c) transportation and vehicle-related research organizations such as Edmunds, Chrome Systems, Inc.; d) insurance companies and brokers; and e) other entities. In my profession, these sources, including those that I have relied on herein, are considered reliable and appropriate to use to estimate vehicle ownership and operating costs.

For purposes of this report, my information sources and methods for estimating the costs of Mr. McFarlin's delivery vehicles are similar to the ones I have employed in other cases related to the sufficiency of POV reimbursement rates in which I have served as an expert. These methods, which typically involve estimating costs for multiple drivers' vehicles, are similar to those employed by Runzheimer International, the consulting firm

that has assisted the IRS in developing the Standard Business Mileage Rate for the last several decades.

Specifically, Runzheimer bases the IRS rate on the weighted average cost per mile of vehicles of representative types, ages, and usage levels in representative locations; that is, on the costs of a typical driver's personally owned vehicle and the portion of the total annual use of that vehicle (in miles) for making deliveries. When applied to a large group of drivers employed by a company such as The Word, this approach reasonably shows what costs each driver is incurring for the business use of his/her vehicle for the benefit of The Word.

In fact, it is my opinion that this approach, if anything, understates the costs incurred by an employer's delivery drivers and, hence, the benefits enjoyed by the employer as a result of its reliance on employees' personally-owned vehicles to meet its customer service needs. This is because the employer *is* avoiding many indirect costs by using an employee-owned, rather than a company-owned fleet, such as the time and labor costs associated with purchasing and disposing of vehicles and all the goods (e.g., fuel) and services (e.g., insurance, maintenance and repair) associated with their ownership and use.

My company has performed detailed vehicle cost analyses for organizations with as many as 10,000 leased company cars. The economies of scale associated with the performance of indirect vehicle management

activities like those just cited are obviously far greater and the costs of these activities thus much lower than those that any individual vehicle owner could hope to realize. Our analyses have found that the annual costs of passenger vehicle management activities are generally on the order of $200 per vehicle per year.

That said, I have *not* attempted to estimate these indirect costs in this case, but rather have restricted my analysis to those categories of direct vehicle cost for which The Word should, at a minimum, be reimbursing a delivery driver such as Mr. McFarlin. If I were to include these other costs that are borne by its employees as a result of The Word utilizing a fleet of privately owned delivery vehicles, my estimates of reasonable reimbursement rates for the company's delivery drivers clearly would be higher than those presented in this report.

### C. Aggregate or Class-wide Reimbursement Rate

An aggregate or class-wide reimbursement rate is a single rate, generally per mile, that is selected to capture the reasonable costs of a group of drivers. It is generally used in lieu of reimbursing for actual expenditures since, for large employers, doing so would be cost prohibitive, impractical, and contrary to industry practice.

The most widely recognized estimate of the cost per mile of owning and operating a motor vehicle is the IRS Standard Mileage Rate. In my experience, most businesses that do not have a fleet of vehicles but instead

14

reimburse employees to drive their own vehicles for business purposes do so using this cents-per-mile rate. This rate, set at $0.575 per mile for 2015, $0.54 per mile for 2016 and $0.535 per mile for 2017, is accepted by the IRS as an appropriate substitute for the recording of actual vehicle expenses. Thus, in my field, the IRS rates are considered one reasonable estimate of vehicle expenses that businesses can rely upon.

It is my understanding that The Word has reimbursed Mr. McFarlin based on an average rate of $.85 per delivery.[5] Based on my work as an expert witness on other cases like this one, I have found that delivery vehicle costs range from approximately $0.25 to $0.50 per mile, with vehicle size, age, annual usage, and fuel prices being factors that have a sizable impact on these costs. For comparison purposes, the IRS Standard Mileage Rate since 2015 has ranged between $0.535 and $0.575 per mile.

As another comparison, those vehicle reimbursement rates used by other companies have typically equated to $1.00 to $1.50 per delivery during recent years. At $0.85 per delivery, The Word's reimbursement rate is less than other reimbursement rates which I have found insufficient. As another comparison, The Word has reimbursed Mr. McFarlin about $0.10 ($.85 / 8.52 average miles per delivery) per mile, compared to other companies' insufficient reimbursements which are at least $.25 per mile.

---

[5] According the information provided, reimbursement is based on a flat rate of $0.75 per delivery, except for deliveries to Laingsburg, Michigan, for which drivers are reimbursed $1.75 per delivery. Based on the number of deliveries to different locations, this works out to an average of about $0.85 per delivery.

I have conducted many studies, like the one I recently conducted for the State of New York, in which I was asked to advise an organization as to whether or not owning specific vehicles in its fleet was more cost effective than reimbursing employees for driving their own vehicles at the IRS Standard Mileage Rate. The State of New York reimbursed employees using the IRS rate and, in fact, spent approximately $13 million a year reimbursing drivers using this rate. So, the use of the IRS rate is widely accepted, even by large employers.

However, some large companies decide to develop their own reimbursement rate rather than use the IRS Standard Mileage Rate. Runzheimer's principal business is the development of "custom" driver reimbursement programs. No doubt, it obtains this business because it has been developing the IRS Standard Mileage Rate for decades.

In other cases on which I have been retained as an expert witness, I found that Runzheimer did not apply the same rigor of scientific analysis or methodology to the reimbursement programs it developed for some of its clients, such as several well-known pizza restaurant/delivery companies, that it applies to the development of the IRS Standard Mileage Rate. For instance, while the IRS rate attempts to capture the costs of many vehicle types, Runzheimer based a given pizza company's rate on the costs of a single "base" vehicle, and not necessarily a vehicle representative of the vehicles driven by their employees to perform their jobs. For this and several

16

other reasons, the reimbursement rate development methodology and rates developed by several large pizza companies with Runzheimer's assistance are fundamentally flawed.

That said, they are not nearly as flawed as the mileage reimbursement "method" The Word has used to reimburse Mr. McFarlin.

**Opinion 2: Based on information furnished by Mr. McFarlin and data obtained from the information sources cited above, I have developed preliminary estimates of reasonable reimbursement rates for Mr. McFarlin. These estimates are set forth in the attached *Excel* file *Estimated Costs for McFarlin.xlsx*.**

### A. Vehicles Used for Deliveries

The approach I normally would take to determine the vehicle ownership and operating costs on which The Word delivery driver reimbursement rate should be based would be to define a "base" vehicle that reflects the attributes of the various types and ages of the vehicles most commonly used by the company's delivery drivers. That is, a base vehicle that is a *composite* of the attributes of the most common types of vehicles – compact sedans, midsize sedans, minivans, pickup trucks, etc. – actually used by The Word drivers. As noted earlier, this is how Runzheimer develops the Standard Mileage Rate for the Internal Revenue Service – albeit using the most common types of vehicles owned by the US population rather than by the delivery drivers of a particular company.

For the purposes of this report, however, I did not have information on all the different types of vehicles used by The Word's delivery drivers during the

17

relevant period of this claim. To the extent that this information can be made available, however, performing cost analyses such as those described below for a composite vehicle would be a straightforward matter.

Due to the lack of information on the vehicles used by all – or even a representative sample of – The Word drivers, I elected to develop a cost estimate for Mr. McFarlin, who worked for the company from July 2015 to about September 2016, using much of the same methodology which can be applied to a group of drivers after identifying a representative "base" vehicle in the manner described above. My analysis of the vehicle costs Mr. McFarlin incurred to make deliveries for The Word is more than sufficient to illustrate the gross inadequacy of The Word's driver reimbursement practices.

From July 21, 2015 to September 1, 2016, Mr. McFarlin drove a 2014 Chevrolet Sonic to perform all of his deliveries for The Word. The costs identified in this report are based on the costs of owning and operating this vehicle. I would note that this vehicle was purchased in nearly new condition and is likely to be newer than most cars driven by The Word's delivery drivers. In my experience, cars used by delivery drivers have an average age between 8 to 10 years, and those older vehicles would generally be more expensive to drive due to lower fuel economy and higher maintenance and repair costs.

**Vehicle Costs Included in My Analysis**

In order to determine the annual and per-mile costs of owning and operating the vehicles on which Mr. McFarlin's business mileage reimbursements should be based, I calculated several specific costs for each of the vehicle models identified above. I calculated these costs based on actual (as reported by Mr. McFarlin) or estimated (using the aforementioned industry data sources) costs of the vehicle he has driven for The Word.

The vehicle costs I calculated were:

- Capital cost (depreciation)
- Interest cost
- Maintenance and repair cost
- Fuel cost
- Insurance cost; and
- Registration and taxes cost.

The methods I used to determine each of these costs, and the resulting cost calculations, are described in the following sections of this report. In all cases, I used methods and data sources that are common to rely on in my profession. The *Excel* workbook I developed to make all my cost calculations contains most of the inputs and all of the outputs (calculations) I developed in this case.

**A. Vehicle Capital Cost**

For purposes of developing a driver reimbursement rate, it is my opinion that the most accurate and equitable way to calculate a given type of

19

vehicle's capital cost is to determine the reduction in its fair market value during a given year of its life. This methodology ensures that an employer like The Word pays only for the capital costs being incurred as the vehicle is driven for the purpose of making deliveries. For this case, reduction in fair market value was determined by the difference between the purchase price and the current value for vehicles still owned by Mr. McFarlin.

I determined the capital costs of Mr. McFarlin's vehicle based on information he provided. Mr. McFarlin's 2014 Chevrolet Sonic was purchased as a demonstration model from a dealer in April, 2015 with 2,724 miles on the odometer. The purchase price was $18,219, $17,219 of which was financed through a five-year car loan with an interest rate of 4.42% per year. Mr. McFarlin still owns this vehicle, and as of September 2016 it had about 50,000 odometer miles.

**B. Interest Costs**

I determined the interest costs Mr. McFarlin incurred for his vehicle, using the principal amounts, loan terms, and loan interest rates noted above.

**C. Vehicle Maintenance and Repair Costs**

There is a significant amount of publicly available information that one can use to estimate the annual maintenance and repair costs of vehicles of different makes and models, ages, and annual usage levels. One such source is Edmund's, a company that has been publishing vehicle specification and cost information since 1966. In my practice, Edmund's True Cost to Own®

tool[6] is a source of information commonly relied on and used to estimate vehicle ownership and operating costs.

The data points from Edmunds that I used to develop the above cost estimates of maintenance and repair costs can be found in the attached *Excel* file *Estimated Costs for McFarlin.xlsx*.

### D. Vehicle Fuel Costs

I determined the fuel cost of Mr. McFarlin's vehicle using three key inputs: estimated annual miles driven, vehicle fuel efficiency in miles per gallon (MPG), and average monthly fuel prices in Michigan between July 2015 and August 2016.

I used the EPA Highway MPG rating for the specific make, model, and model year of Mr. McFarlin's vehicle.

Once I had determined the appropriate EPA MPG ratings to use, I made two adjustments to these ratings. First, I reduced them by ten percent to reflect the fact that EPA ratings are widely recognized by professional fleet managers who measure the fuel economy of the vehicles they manage to overstate the actual fuel consumption rates achieved by vehicles due to the fact that the EPA ratings are developed using tests performed under laboratory conditions that attempt to simulate but do not fully replicate real-world driving conditions.[7]

---

[6] www.edmunds.com/tco.html.
[7] See, for example, *Here's Why Real-World MPG Doesn't Match EPA Ratings*, available at http://www.edmunds.com/fuel-economy/heres-why-real-world-mpg-doesnt-

After making this ten-percent downward adjustment, I next reduced the MPG ratings a further one percent per year of average vehicle age to account for the cumulative effects of wear and tear on vehicle engines and transmissions that occurs as vehicles age. This adjustment is based on the findings of research I have conducted for organizations that have large numbers of business vehicles of the same type and across a range of ages and appropriate cross sectional data on actual amounts of fuel consumed by these vehicles.

To determine the cost per mile for fuel, I divided the average cost of a gallon of regular gasoline in Michigan by the adjusted MPG rate. The fuel costs per gallon that I used to determine vehicle fuel costs were the average monthly prices by geographic area and by month published by the US Energy Information Agency.[8] These prices are shown in my *Excel*-based vehicle cost determination model workbook.

The original EPA City MPG ratings and the adjustments I made to them can be found in my *Excel*-based vehicle cost determination file. So too can the fuel price per gallon data by geographic area by year.

**F. Vehicle Insurance Costs**

I used Mr. McFarlin's estimated annual insurance cost of $128 per month during the period from July, 2015 to September, 2016. He has stated that

---

match-epa-ratings.html; and *About EPA Ratings* available at http://www.fueleconomy.gov; EPA Fuel Economy Guide (updated Feb. 20, 2013) pp. i & 39.
        [8] http://www.eia.gov/dnav/pet/pet_pri_gnd_dcus_sfl_m.htm.

he carried full insurance coverage during this period. It is worth noting, in the case of other drivers who may not carry full insurance, that failing to do so is tantamount to self-insuring, which will produce similar cost estimates over a period of time.

### G. Vehicle Registration Cost

I determined vehicle registration costs based on the dollar amount for a one-year renewal Mr. McFarlin's vehicle registration obtained from the Michigan Secretary of State website.

### H. Annual Miles Driven and Business Use

Needless to say, annual vehicle usage is a key determinant of vehicle ownership and usage costs. Mr. McFarlin commenced employment with The Word in July 2015. The amounts he drove, by month, are shown in the aforementioned *Excel* file, submitted with this report.

These amounts are based on an average of 11.69 miles per trip for an estimated 2,842 delivery trips made by Mr. McFarlin in the period he was employed by The Word, a total of about 33,223 miles. This amounts to about 2,370 miles per month during the period from July 2015 to September 2016, giving an estimated annual average of about 28,500 miles per year for business use. I estimated that Mr. McFarlin drove his vehicle 10,000 miles per year for personal use, leading to a total annual utilization of about 38,500 miles.

## I. Total Vehicle Cost per Mile

The average cost per mile for Mr. McFarlin's vehicle, as shown in the attached *Excel* file *Estimated Costs for McFarlin.xlsx*, is $0.33. In my opinion, this is the minimum amount The Word should have reimbursed Mr. McFarlin for the approximately *33,223* miles of driving for the company in his personally owned vehicle since July 2015. This amount is over three times the rate at which Mr. McFarlin was reimbursed. Applying these reasonable reimbursement rates to this number of miles yields a total vehicle cost of about $10,917. The calculation of total cost per mile is shown in the aforementioned attached *Excel* file.

I noted earlier in this report that Mr. McFarlin's vehicle is significantly newer than I would expect for a delivery vehicle, based on my experience in cases such as this. On average, vehicles used by delivery drivers are between 8 to 10 years old. While drivers tend to save money on *capital* costs (i.e. depreciation, or more directly, the cost of buying a new vehicle) by driving older vehicles, the total cost of *operating* an older vehicle tends to be higher due to lower fuel efficiency and higher maintenance and repair costs. This typically leads to a total cost per mile of $0.40 to $0.60 for such older vehicles. When a delivery driver accumulates nearly 30,000 miles per year on a 10 year old personal vehicle for delivery use, fuel and maintenance costs can be very high indeed. Additionally, I have found that when drivers put this many miles on their POVs in a year, they must replace their vehicles

more often than they would normally—something I have not taken into account in determining Mr. McFarlin's costs. Thus, I would expect the cost per mile for other delivery drivers employed by The Word to be as high as, if not higher than, Mr. McFarlin's costs calculated here.

\*       \*       \*

This report, along with all of my opinions and conclusions, is subject to my right to supplement and conduct further analyses given that discovery is ongoing in this matter. Nonetheless, my calculations and opinions expressed herein are based on methodologies, formulas, and sources of data commonly relied on in my field of practice, which is the calculation of the costs of owning and operating a vehicle for business purposes. I have reached all of my opinions and conclusions to a reasonable degree of certainty consistent with the standards applied in my field of practice. I am prepared to testify regarding the opinions and conclusions contained in this report.

## Compensation for My Work

I am being compensated for my work at a rate of $275 per hour, except for time spent testifying in deposition or court, in which case my rate is $325 per hour.

Dated: June 13, 2017

Paul T. Lauria