# Cuahua v. Tanaka Japanese Sushi Inc.

United States District Court for the Southern District of New York

September 29, 2017, Decided; September 29, 2017, Filed

14 Civ. 4177 (ER)

**Reporter**
2017 U.S. Dist. LEXIS 161714 *

ELISEO CUAHUA, RODRIGO CUAHUA, RAUL CUAHUA, ORLANDO TLAXCALTECATL FLORES, and VIDAL RIOS, individually and on behalf of all others similarly situated, Plaintiffs, — against — TANAKA JAPANESE SUSHI INC. (D/B/A TANAKA), SAMURAI SHASHIMI INC. and JIN JIANG, Defendants.

**Counsel:** [*1] For Eliseo Cuahua, Rodrigo Cuahua, Raul Chahua, Orlando Tlaxcaltecatl Flores, individually and on behalf of others similarly situated, Plaintiffs: Michael Antonio Faillace, LEAD ATTORNEY, Jesse S Barton, Shawn Raymond Clark, Michael Faillace & Associates, P.C., New York, NY.

For Vidal Rios, Plaintiff: Jesse S Barton, Shawn Raymond Clark, Michael Faillace & Associates, P.C., New York, NY.

For Tanaka Japanese Sushi Inc., doing business as, Tanaka, Jin Jiang, Samurai Sashimi Inc., Defendants: Daniel Logan Millman, Daniel L. Millman, Esq, Jericho, NY.

**Judges:** Edgardo Ramos, United States District Judge.

**Opinion by:** Edgardo Ramos

## Opinion

### OPINION AND ORDER

Ramos, D.J.:

Plaintiffs were employed at various times between February 2011 and April 2015 at defendant Tanaka Japanese Sushi Inc. ("Tanaka"), a Japanese restaurant located at 222 E. 51st Street, in New York City. First Amended Complaint ("FAC"), Doc. 22 at ¶¶ 1-2. While they were employed primarily as delivery workers, they were also required to spend part of their work days performing non-delivery, non-tipped work including washing dishes, cutting vegetables, cleaning the basement, and carrying supplies between the basement and the restaurant. Id. at ¶ 4. Defendant Jin [*2] Jiang was at all relevant times the sole owner of Tanaka and, as the operator of the restaurant, was responsible for hiring, firing, and determining the rate of pay and hours worked by restaurant employees. Defendant's Trial Affidavit ("Jiang Aff.").[1]

Plaintiffs allege that during the entirety of their employment, they worked in excess of 40 hours per week without appropriate compensation either at the straight rate of pay or for any additional overtime premium, and were not paid the required "spread of hours" pay for days in which they worked over 10 hours. FAC at ¶ 5. Plaintiffs bring this action for unpaid minimum wages and overtime pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the New York Labor Law §§ 190 *et seq.* and 650 et *seq.* ("NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. Tit.12, §142-2.4(a) (2009). Plaintiffs also seek liquidated damages, interest, attorneys' fees, and costs.

The lawsuit was filed June 10, 2014. A bench trial on Plaintiffs' allegations was conducted by this Court on October 26, 2015. All five Plaintiffs and defendant Jiang presented direct testimony via affidavit. Plaintiffs Eliseo Cuahua, Rodrigo Cuahua, Orlando Flores, [*3] and Vidal Rios were cross-examined at trial. Plaintiff Raul Cuahua and defendant Jiang did not appear at trial and their affidavits were received into evidence by stipulation. Tr. 58.[2] This Opinion constitutes the Court's findings of fact and conclusions of law on whether Defendants acted in good faith, whether their violation of the labor laws was willful, and the proper measure of

---

[1] Defendant Jiang's affidavit was received into evidence as Defendant's Exhibit F at the bench trial held in this matter held on October 26, 2015.

[2] References to "Tr." are to the transcript of the October 26, 2015 bench trial.

damages.

## I. FINDINGS OF FACT

*Testimony Common to all Plaintiffs*[3]

Plaintiffs allege that they were "ostensibly" hired as delivery workers at Tanaka but were required to spend approximately one quarter of their workday[4] performing other tasks such as: cutting vegetables, washing dishes, carrying down and stocking deliveries in the basement, bringing up food items from the basement for the cook, washing the basement with soap and water every day, washing the kitchen, twisting and tying cardboard boxes and taking them out, taking out garbage, and bringing down boxes of fish two to three times a week. Pltf.'s Exs. A-E. Indeed, if at any point during the day they were not making deliveries, Plaintiffs were assigned to these other tasks. *Id.* Plaintiffs were occasionally given a short meal break, but were not allowed **[*4]** to take it on a regular basis because it would be interrupted by work. *Id.*

The four Plaintiffs other than Vidal Rios were paid $250 per week in cash; Rios was paid $300 per week. *Id.* When they began their employment, no one told Plaintiffs that a tip credit would be taken from their wages. *Id.* None of the Plaintiffs ever received overtime pay (at time and a half) for hours worked in excess of 40 hours per week, or spread of hours pay. *Id.* They would be paid the same base amount each week, regardless of the number of hours worked during that week. *Id.* With the exception of Rios, Jiang personally delivered Plaintiffs their wages to them in cash on a weekly basis. *Id.* Rios was paid in cash from January 2014 to October 2014, and by personal check from October 2014 until April 2015. Ex. D.

Plaintiffs additionally testified that defendants failed to provide documentation required under the FLSA and NYLL. Specifically, they assert:[5]

- they were never required to keep track of their time nor did defendants accurately record the actual hours they worked;

- they were never provided with any document that reflected the hours they worked (either daily, weekly, or by any other measure), their hourly **[*5]** rate of pay, overtime, or any other record or report regarding their pay, hours worked, or any deductions or credits taken against their wages;
- they were never provided with a statement of wages;
- they were never provided with written information regarding minimum wage and overtime requirements under New York State or federal laws;
- they were never provided with a written notice stating their wage rate, or any allowances or credits Tanaka intended to take from their pay;
- defendants did not post or maintain any posters or state or federal notices with information about the minimum wage and overtime laws on the premises of Tanaka.

Pltf.'s Exs. A-E.

*Testimony of Eliseo Cuahua*

Eliseo was employed at Tanaka from March 2012 until May 23, 2014. Ex. A ¶ 7. Throughout his employment, he typically worked approximately 69.5 hours per week which was broken down as follows: from approximately 11:00 am to 11:30 pm three days a week, from approximately 11:00 am to 11:00 pm two days a week, and from 3:00 pm to 11:00 pm on Sundays. *Id.* at ¶ 12. During his employment, he was required to purchase two bicycles (one for $350 and one for $1420), and a helmet for $25. *Id.* at ¶ 25.

*Testimony of Rodrigo Cuahua* **[*6]**

Rodrigo was employed at Tanaka from August 2010 until April 15, 2011. Ex. B ¶ 7. Throughout his employment, he typically worked approximately 69.5 hours per week which was broken down as follows: from approximately 11:00 am to 11:30 pm three days a week, from approximately 11:00 am to 11:00 pm two days a week, and from 3:00 pm to 11:00 pm on Sundays. Ex. B ¶ 12. During his employment, he was required to purchase two bicycles (one for $280 and one for $240), two helmets ($35 each), two lights ($10 each), three

---

[3] The direct testimony of Plaintiffs Eliseo Cuahua, Rodrigo Cuahua, Orlando Flores, Vidal Rios, and Raul Cuahua were received in evidence as Plaintiffs' Exhibits A, B, C, D and E, respectively.

[4] Plaintiff Orlando Flores testified that he spent approximately one-third of his time performing non-delivery duties as he spent most of the day Sunday washing dishes. Ex. C.

[5] Plaintiff Rios' experience is slightly different, as will be discussed below.

tires ($22 each), two brakes ($15 each), two brake pads ($5 each), a bell for $20, and a fender for $25. *Id.* at ¶ 25.

*Testimony of Raul Cuahua*

Raul was employed at Tanaka from February 2011 until October 2013. Ex. E ¶ 7. Throughout his employment, he typically worked approximately 69 hours per week which was broken down as follows: from approximately 10:00 am to 10:00 pm Monday through Friday, and from 3:00 pm to 11:30 pm on Sundays. *Id.* at ¶ 13. During his employment, he was required to purchase two bicycles (one for $250 and one for $150), a helmet for $40, and six lights ($15 each). *Id.* at ¶ 26.

*Testimony of Orlando Flores*

Flores was employed at Tanaka from April 2012 until May **[*7]** 23, 2014. Ex. C ¶ 7. Throughout his employment, he typically worked approximately 69.5 hours per week which was broken down as follows: from approximately 11:00 am to 11:30 pm three days a week, from approximately 11:00 am to 11:00 pm two days a week, and from 3:00 pm to 11:00 pm on Sundays. *Id.* at ¶ 12. During his employment, he was required to purchase three bicycles (one for $150, one for $140, and one for $1420), a helmet for $30, and ten lights for $15. *Id.* at ¶ 25.

*Testimony of Vidal Rios*

Rios was employed at Tanaka from January 2014 until April 2015. Ex. D ¶ 7. Throughout his employment, he typically worked from 11:00 am to 11:30 pm for a weekly total of 75 hours per week. *Id.* at ¶ 12. During his employment, he was required to purchase a bicycle for $300, a helmet for $25, a vest for 25, a set of waterproof outerwear for $50, and a pair of waterproof shoes for $50. *Id.* at ¶ 26.

At trial, Rios acknowledged that in June of 2014, he received and signed a Notice and Acknowledgment of Pay Rate and Payday (received in evidence as Defendant's Ex. A), and an Employee Salary Receipt (received in evidence as Defendant's Ex. B). Tr. 33-34. However, he indicated that he was presented with **[*8]** and signed the Notice and Acknowledgment of Pay Rate and Payday on July 3, 2014, some months after he began working at Tanaka. Tr. 37.

At trial, Rios was also confronted with his deposition testimony, during which he testified that he worked 62 to 63 hours per week at Tanaka. Tr. 47. While he acknowledged so testifying, he persisted in his trial testimony that he worked approximately 75 hours per week. *Id.*

*Testimony of Jin Jiang*

In his affidavit, Jiang largely concedes that he did not provide Plaintiffs other than Rios with the required documentation and notices, and specifically, that he failed to provide them with written notice of the fact that he would be taking a tip credit. Jiang Aff. at ¶¶ 11, 14, 17, 18, 25. With the exception of Rios, Jiang admits that he did not maintain employment records which set forth the specific hours, rate of pay, and payments made to Plaintiffs, and did not provide them with pay statements. *Id.* at ¶ 25. Jiang asserts that he did not knowingly violate the labor laws, however, and blames his failure on the fact that he is uneducated, unfamiliar with the laws of this country, and that, in his experience in the restaurant industry, it is not customary to **[*9]** provide such documentation. *Id.* at ¶ 18. Jiang also proffers that he is a Chinese national who came to this country at 17 years of age, and that in China it is customary to "pursue working relationships with far less documentation." *Id.*

While he did not comply with the letter of the law, Jiang asserts that he treated his employees fairly and that they were compensated above the minimum wage. He states, for example, that at the outset of their employment, he informed each of his delivery workers that they would be allowed to keep all of their tips, and that such tips typically average between $80 and $130 per day. *Id.* at 9, 13. Between base pay and tips, Jiang asserts that delivery workers typically made approximately $900 per week, "which is significantly more than they would make through a calculation of pay through straight hourly and overtime pay." *Id.* at 10. Moreover, each of his employees orally acknowledged and accepted the compensation arrangement, which is why he did not believe that what he did was wrong. *Id.* at 13. In addition, Jiang provided each of his delivery workers with two free meals per day. *Id.* at 16

Jiang also disputed specific facts alleged by the Plaintiffs. As a preliminary matter, he asserts that he **[*10]** does not recall Raul Cuahua working for Tanaka at all. *Id.* at 21. More generally, Jiang asserts that Plaintiffs are exaggerating the number of hours they

worked; he estimates that they worked no more than 57 hours per week. *Id.* at ¶ 28. Finally, he asserts that they were each paid $300 per week in base pay, not $250 as Eliseo, Rodrigo, Raul, and Flores claim. *Id.* at ¶ 29.

## II. CONCLUSIONS OF LAW

*Wages, Tip Credit, Overtime, and Spread-of-Hours Compensation*

Under the FLSA, an employee seeking to recover unpaid wages "'has the burden of proving that he performed work for which he was not properly compensated.'" *Fujun Jiao v. Shi Ya Chen*, No. 03 Civ. 165, 2007 U.S. Dist. LEXIS 96480, 2007 WL 4944767, at *2 (S.D.N.Y. March 30, 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)). However, the employer bears his own burden under state and federal law of maintaining "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c); *see also* N.Y. Comp.Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.1. If the employer fails to meet this burden, the plaintiff may establish his entitlement to unpaid wages by introducing "'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference,'" *Fujun Jiao*, 2007 U.S. Dist. LEXIS 96480, 2007 WL 4944767, at *2 (quoting *Anderson*, 328 U.S. at 687), which he may do "relying on his recollection alone," *Doonam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y.2005). The burden **[*11]** then shifts back to the employer to establish that the employee was in fact properly compensated. *Fujun Jiao*, 2007 U.S. Dist. LEXIS 96480, 2007 WL 4944767, at *2-3. "If the employer fails to do so, the court may enter judgment in the employee's favor, using her recollection to determine damages, 'even though the result be only approximate.'" *Lanzetta v. Florio's Enterprises, Inc.*, 763 F. Supp. 2d 615, 2011 WL 253961, at *1 (S.D.N.Y. 2011) (quoting *Reich v. S. New Eng. Telcomms. Corp.*, 121 F.3d 58, 67 (2d Cir.1997)).

Similarly, both state and federal law allow employers to subtract some portion of the tips their employees receive from the amount they are owed under minimum wage laws—to take a "tip credit"—provided that the total amount received by the employee is equal to or in excess of the statutory minimum wage. 29 U.S.C. § 203(m); NYLL § 652(4); *see also* 12 NYCRR § 146-1.3.

Under the FLSA, a tip credit may only be taken when

> (1) the employer has informed the tipped employee of statutory requirements related to the tip credit; and (2) "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

*Heng Chan I*, 2007 U.S. Dist. LEXIS 7770, 2007 WL 313483, at *17 (quoting 29 U.S.C. § 203(m)). These requirements are to be "strictly construed." *Chu Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y.2002).

Furthermore, the FLSA requires that, in order to take advantage of the tip credit, employers must provide their employees with "proper notice of minimum **[*12]** wage laws." *Heng Chan I*, 2007 U.S. Dist. LEXIS 7770, 2007 WL 313483, at *18. "Employers bear the burden of showing that they have satisfied this requirement"; if an employer cannot do so, "'no tip credit can be taken and the employer is liable for the full minimum-wage.'" *Id.* (quoting *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir.1994)). Therefore, the plaintiffs are entitled to damages equal to the full minimum wage rate for every hour that they worked. For the same reasons, the defendant is not entitled to a tip credit under NYLL. NYCRR, tit. 12, 146-1.3 ("An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker . . . has been notified of the tip credit."); *see also Lanzetta*, 763 F. Supp. 2d 615, 2011 WL 253961, at *5.

Both federal and state law require that employers pay employees one and one-half times the ordinary minimum wage rate for any hours over forty that they work per week. 29 U.S.C. § 207(a); 12 NYCRR § 146-1.4; *see also Kolesnikow v. Hudson Valley Hospital Center*, 622 F. Supp. 2d 98, 118 (S.D.N.Y.2009). The plaintiffs have demonstrated that they worked well in excess of forty hours during each week that they were employed by the defendants. Therefore, they are entitled to recover one and one-half times the minimum wage rate for any hours in excess of forty that they worked each week.

Although the FLSA does not have a similar provision, New York employees are entitled by law to receive "one additional **[*13]** hour of pay at the basic minimum hourly rate" for any workday that lasts longer than ten hours, including "intervals off duty." 12 NYCRR § 146-1.6; *see also Lanzetta*, 763 F. Supp. 2d 615, 2011 WL

253961, at *3. "The additional hour of pay is not a payment for time worked or work performed and need not be included in the regular rate for the purpose of calculating overtime pay." 12 NYCRR § 146-1.6(c). The plaintiffs have established that five of the six days they worked each week lasted in excess of ten hours. They are therefore entitled under New York law to a spread-of-hours premium for each day worked in excess of 10 hours.

Because defendants have made no showing of their compliance with the law, indeed, because they have so conceded, the plaintiffs' estimates regarding their employment will be credited and their damages calculated on that basis. *See* Defendants' "Closing Statement," Doc. 46 at 1 ("In light of the applicable statutory provisions and existing case law, the absence of documentation pertaining to wages prevents defendants from arguing to this Court that there is no liability on their part."). This finding applies to Plaintiffs' estimates of: (1) their dates of employment, including Raul Cuahua, who Jiang does not recall having worked at Tanaka; (2) their estimates **[*14]** of time spent on non-tipped work; and (3) their estimate of each having worked approximately 69.5 hours per week.[6] However, as regards Plaintiff Vidal Rios, his damages will be limited from January 2014 to July 3, 2014, when the record at trial establishes that he was provided with the required documentation.

Plaintiffs make claims pursuant to both state and federal wage laws. Although "plaintiffs are not entitled to recover twice for the same injury," *Cao v. Wu Liang Ye Lexington Restaurant, Inc.*, No. 08 Civ. 3725, 2010 U.S. Dist. LEXIS 109373, 2010 WL 4159391, at *2 n. 2 (S.D.N.Y. Sept. 30, 2010), "[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages," *Fujun Jiao*, 2007 U.S. Dist. LEXIS 96480, 2007 WL 4944767, at *17. Thus, to the extent the plaintiffs' allegations allow recovery under both state and federal law, the law providing for the greatest recovery will govern the calculation of damages.

*Liquidated Damages and Good Faith*

An employer who violates the FLSA's overtime requirements is generally liable to its employee for the employee's "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). But, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable **[*15]** grounds for believing that his act or omission" did not violate the FLSA, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof" not to exceed 100% of actual damages. 29 U.S.C. § 260.

Here, there can be no dispute, and indeed defendants concede, that with the exception of Rodrigo Cuahua, who left his employment with Tanaka in 2011, Plaintiffs are entitled to unpaid compensation as a result of defendants' failure to comply with the FLSA and NYLL. However, defendants argue that because they acted at all times in good faith, liquidated damages should not be imposed.

"Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 142 (2d Cir.1999). An exception to the FLSA's liquidated damages rule exists "where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir.2008). "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages **[*16]** being the norm and single damages the exception." *Herman*, 172 F.3d at 142. "To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." *Barfield*, 537 F.3d at 150 (citing *Herman*, 172 F.3d at 142); *see also Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) ("Under § 260, the employer bears the burden of establishing the defense of good faith. *The defense requires plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it.*") (emphasis added).

Defendants here have failed to meet their "difficult" burden of showing they acted in good faith. As Jiang's Affidavit makes clear, not only did he fail to present substantial evidence of an honest intention to ascertain

---

[6] The Court finds that Vidal Rios should also be compensated on the basis of 69.5 hours per week despite the fact that he testified to having worked 75 hours.

what the FLSA requires in order to comply with it, he made no effort at all. Rather, he simply relied on his experience in the restaurant industry that what he was doing was appropriate. This is plainly insufficient to entitle defendants to the good faith exception.

Plaintiffs also seek liquidated damages under both the FLSA and NYLL. *See* Plaintiffs' Proposed Findings of Fact and Conclusions of Law, Doc. 48 at ¶ 39. The Court declines to grant liquidated damages under both statutes. There **[*17]** is a split of authority in this Circuit concerning cumulative recovery of liquidated damages under both the FLSA and the NYLL. *See Gunawan v. Sake Sush Rest.*, 897 F. Supp. 2d 76, 2012 WL 4360754, at *9 (E.D.N.Y. 2012) (comparing *Greathouse v. JHS Sec., Inc.*, No. 11 Civ. 7845, 2012 U.S. Dist. LEXIS 127312, 2012 WL 3871523, at *7 (S.D.N.Y. Sept. 7, 2012) and *Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2011 U.S. Dist. LEXIS 55771, 2011 WL 2022644, at *4 (S.D.N.Y. May 2, 2011)). The split appears to have stemmed in part from the differences in both the amount of and the basis for awarding liquidated damages that existed between the federal and the state statutes before the amendments to the NYLL that occurred in November of 2009 and April of 2011. *Quiroz v. Luigi's Dolceria, Inc.*, No. 14 Civ. 871, 2016 U.S. Dist. LEXIS 64662, 2016 WL 2869780, at *6 (E.D.N.Y. May 17, 2016). As a result, the recent trend has moved away from awarding liquidated damages under both the FLSA and the NYLL, and instead making a single award under the statute that provides the greater recovery. *Id.; see also, e.g., Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14 Civ. 1695, 2015 U.S. Dist. LEXIS 51809, 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (citing *Man Wei Shiu v. New Peking Taste Inc.*, 2014 U.S. Dist. LEXIS 20836, 2014 WL 652355, at *18 (E.D.N.Y. Feb.19, 2014) and *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 381-82 (E.D.N.Y. 2013)); *Garcia v. JonJon Deli Grocery Corp.*, No. 13 Civ. 8835, 2015 U.S. Dist. LEXIS 108264, 2015 WL 4940107, at *6 (S.D.N.Y. Aug. 11, 2015); *Ramirez v. H.J.S. Car Wash Inc.*, No. 11 Civ. 2664, 2013 U.S. Dist. LEXIS 51344, 2013 WL 1437600, at *7 (E.D.N.Y. Apr. 9, 2013); *Villegas v. Monica Rest. Corp.*, No. CV-12-4131 VVP, 2013 U.S. Dist. LEXIS 111984, 2013 WL 4046261, at *3 (E.D.N.Y. Aug. 8, 2013). Finding the reasoning of the foregoing decisions persuasive, I will follow that trend and decline to provide cumulative liquidated damages under both statutes.

*Willful Violations and the Statute of Limitations*

The statute of limitations to bring an FLSA claim is two years; if an FLSA violation was "willful", however, a three-year limitations period applies. 29 U.S.C. § 255(a). "An employer willfully violates the FLSA when it either knew or showed reckless **[*18]** disregard for the matter of whether its conduct was prohibited by the Act." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir.2011) (citation omitted). "Mere negligence is insufficient." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir.2009). An employer may act unreasonably and yet not recklessly. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n. 13, 108 S. Ct. 1677, 100 L. Ed. 2d 115, (1988). "Recklessness is defined as[,] at the least, an extreme departure from the standards of ordinary care[,] to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir.2009) (citation omitted) (securities fraud). Reckless disregard of a fact requires "subjective awareness" of the probability of the existence of the fact. *See, e.g., Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 182 (2d Cir.2000) (citation omitted) (defamation). Importantly, however, "[t]he burden is on the employee to show willfulness." *Young*, 586 F.3d at 207. The willfulness standards for the FLSA statute of limitations and NYLL liquidated damages do not differ to any appreciable extent. *Kuebel*, 643 F.3d at 366.

Plaintiffs have failed to carry their burden to show that defendants' actions were willful. In their Proposed Findings of Fact and Conclusions of Law, Plaintiffs merely state in conclusory fashion that defendants' actions were willful. *See, e.g.*, Doc. 46 at ¶¶ 28-32. Indeed, they appear to argue that defendants were willful for essentially the same reasons that **[*19]** they were unreasonable. That is insufficient to meet their burden. *See McLean v. Garage Management Corp.*, No. 09 Civ. 9325, 2012 U.S. Dist. LEXIS 55425, 2012 WL 1358739, at *8, (S.D.N.Y. April 19, 2012) (finding that plaintiffs failed to establish willfulness by merely relying on the same facts that established lack of good faith). Accordingly, the statute of limitations for the FLSA claims is two years. As a result, Plaintiff Rodrigo Cuahua, who left his employment with Tanaka in April 2011, more than two years prior to the time the suit was filed in June 10, 2014, may not recover under the FLSA.

*NYLL Prejudgment Interest*

Courts typically award prejudgment interest on damages for NYLL violations but not on FLSA violations. *See*

*McLean* 2012 U.S. Dist. LEXIS 55425, [WL] at *10-11. Plaintiffs will be granted prejudgment interest at the New York rate of interest. *See id.* ("Because prejudgment interest 'can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate.' Pursuant to N.Y. C.P.L.R. §§ 5001(b), 5004, prejudgment interest on the plaintiffs' NYLL unpaid overtime wage damages shall be computed at a rate of nine (9) percent per annum from a single reasonable intermediate date.") (internal citations omitted).

*Wage Notice and Wage Statements Under the NYLL*

Plaintiffs Eliseo, Rodrigo, Raul, and Flores have established that defendants failed **[*20]** to provide them with wage and hour notices in violation of NYLL § 195(1)(a) for the entirety of their employment, and Rios has established that defendants failed to provide him with such notices between January 2014 and July 3, 2014. They are therefore entitled to recover damages of $50 per week, up to a statutory maximum of $2,500. NYLL § 198(1-b).

Plaintiffs have also established that defendants failed to provide them with wage statements with each payment of wages in violation of NYLL § 195(3). They are therefore entitled to recover damages in the amount of $100 per week, up to a statutory maximum of $2,500. NYLL § 198(1-b).

*Tools of the Trade*

Each plaintiff alleges without contradiction that he was required to purchase a bicycle and related equipment in order to carry out the deliveries. "Vehicles such as bicycles . . . are considered 'tools of the trade' if employees are required to possess and utilize them in the course of their employment." *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y.2010); *see, e.g., Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 257-58 (S.D.N.Y.2008). "The FLSA prohibits employers from requiring employees to purchase the tools of their trade ... 'when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.'" *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725, 2010 U.S. Dist. LEXIS 109373, 2010 WL 4159391 at *4 (S.D.N.Y. Sept.30, 2010) (Chin, D.J.) (quoting 29 C.F.R. § 531.35); *see also* 29 C.F.R. § 531.35 ("[I]f it **[*21]** is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the" FLSA.). Likewise, under New York law, "[i]f an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage." 12 N.Y.C.R.R. § 146-2.7. Because plaintiffs were required to purchase tools of the trade, such purchases may be included in the calculation of the appropriate level of damages.

*Meal Credit*

Jiang testified that he provided his delivery workers with two free meals each work day. Jiang Aff. at ¶¶ 15-17. While the Plaintiffs testified that they were sometimes made to take their meals earlier or later than usual depending on how busy the restaurant was, they did not dispute that they received free meals. Defendants are therefore entitled to include the meal credit in the calculation of damages.

*Attorneys' Fees*

The FLSA and NYLL both contain fee-shifting **[*22]** provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b); NYLL § 663(1). Accordingly, Plaintiffs will be awarded attorneys' fees and costs in an amount to be determined.

**III. CONCLUSION**

For the reasons set forth above, Plaintiffs have established that defendants have violated the FLSA and NYLL. Defendants' violations of the same were not in good faith, thereby entitling Plaintiffs to liquidated damages, but they were not willful, thereby confining the statute of limitations to two years.

The parties are directed to submit their damage calculations on consent based on this Opinion's conclusions of law by Friday, October 20, 2017. Plaintiffs' counsel will then be given an opportunity to submit an application for attorneys' fees and costs.

It is SO ORDERED.

Dated: September 29, 2017

New York, New York

/s/ Edgardo Ramos

Edgardo Ramos, U.S.D.J.

**End of Document**